[No. 26334. Department Two. December 3, 1936.]

Saimie I. Lassiter, *as Administratrix, Appellant,* v.
Shell Oil Company *et al., Respondents.*[1]

*John Kelleher* and *Wright & Wright,* for appellant.

*Roberts & Skeel* and *W. R. McKelvy,* for respondents.

Holcomb, J.—Appellant, as administratrix of the estate of her deceased husband, brought this action against respondents for damages for the death of the husband in an automobile accident.

[1] Reported in 62 P. (2d) 1096.

Respondent Gaut was a salesman for the Shell Oil Company, Spokane Division, being assigned to territory in Washington east of the Cascade mountains, and was provided with a Ford V8 automobile. On August 2, 1935, Gaut was driving from Wenatchee to Ellensburg, enroute to Yakima; and, notwithstanding strict instructions given by the oil company to all of its employees prohibiting them from transporting passengers in company cars, Lassiter was riding with him. Shortly after 7:30 p. m., between Cle Elum and Wenatchee, at a point approximately seventeen miles east of Cle Elum on what is known as "Blewett pass," the car left the highway on a slight curve and collided with a tree, causing the death of Lassiter and very seriously injuring Gaut.

The complaint of appellant alleges, among other things, that there is a public highway running between Wenatchee on the north and east, and Cle Elum on the south and west, with a branch to Ellensburg, all within the state of Washington, which highway traverses and passes over what is known as "Blewett pass;" that a great part of the highway is either paved or oiled macadam, but a great deal of it is very steep with very precipitous grades and contains many abrupt, sharp curves and "S" curves, and at various places bridges and culverts, over which the highway passes; that likewise in many places close to the highway there are large green trees of forest variety and size. The complaint further alleges that Lassiter was a passenger in the automobile of respondent oil company at the time the car was being driven and operated by respondent Gaut as agent and under the direction and control of respondent oil company; that Gaut, operating the same for the oil company with its consent and under its control, drove the automobile

" . . . down the road at a high and dangerous rate of speed, and at a speed that was wanton, heedless, reckless and intentional, as well as willful, and at an unlawful and illegal and dangerous rate of speed."

There is evidence on the part of two miners, occupying a cabin eight hundred or one thousand feet from the place where the car hit the tree, that Lassiter and Gaut stopped at the cabin at approximately 5:30 p. m.; that some one produced liquor, and while all drank some of it, Gaut drank more than any one else; that, when the party left the cabin, the car started up so fast the wheels spun from a standstill; that before it was out of sight it was going between forty and forty-five miles an hour and gaining speed.

There is not a scintilla of evidence that there was an agreement to share expenses for the trip between Gaut and Lassiter, which, of course, would have been very improbable, as Gaut's expenses were paid by his employer. The only evidence there is as to the nature of Lassiter's occupancy of the car was produced by respondents. Two witnesses testified that they were waiters in a beer tavern in a hotel in Wenatchee, where Gaut ordered some beer; that Lassiter, who had been temporarily employed in the hotel as a bell boy, overheard Gaut say he was going to Yakima and suggested that he would like to go to Ellensburg to see his wife; that he did not ask Gaut right out if he could ride with him, but as near as one of them could remember Gaut suggested that, if Lassiter wanted to, he could ride with him. All this testimony is by disinterested witnesses, is undisputed, and presented no question of fact for the jury.

Because of the death of Lassiter and the provisions of Rem. Rev. Stat., § 1211 [P. C. § 7722], no testimony was received as to what he said or what apparently was said to him concerning taking him in

the car other than as above stated. It is plain that he was not expected to nor intended to pay for his transportation. Under those facts, Lassiter was undoubtedly an invited guest. *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854; 256 Pac. 333.

We take judicial knowledge that, besides the Blewett pass state highway, another state highway runs between Wenatchee and Ellensburg, over both of which are public transportation systems providing daily passenger service of which Lassiter could have availed himself.

Those circumstances bring the case squarely within the statute, Laws of 1933, p. 145, Rem. Rev. Stat. (Sup.), § 6297-1 [P. C. § 196-57a], and our recent decision in *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615.

Appellant stoutly contends that that decision was incorrect on the constitutional grounds therein involved and should be reconsidered. We do not agree and are content with the reasoning and conclusion in that case.

Lassiter was in no sense a guest of the owner of the car. He was riding contrary to the express inhibition of the owner. The owner could not possibly owe any duty to Lassiter under those conditions.

It is urged that, even though the injured party is a trespasser as to the owner of the car, the employer would be liable if the injury was caused by the wanton and willful negligence of the driver. In *Mayhew v. DeCoursey,* 135 Kan. 184, 10 P. (2d) 10, the supreme court, citing many authorities from courts of last resort from other states, held that, where a truck driver without authority from his employer so to do permits one not employed to ride his truck, and the one permitted to ride is injured by the negligence of the driver, the employer of the truck driver is not liable, even though the negligence of the driver was wanton.

So, here, even though Gaut was grossly and wantonly negligent, it was only negligence.

Appellant further forcefully contends that, even though the oil company cannot be held liable under our statute and rule of decision, that Gaut certainly should be liable. But here, as in the *Shea* case, there is no evidence, and no justifiable inference from any evidence, that Gaut intended "to commit suicide, homicide, or mayhem, or to destroy property." We there held that there was no basis for holding appellant liable as for an intentional accident.

"An act done willfully is done intentionally and designedly." *State v. Vanderveer,* 115 Wash. 184, 196 P. 650.

See, also, *Manica v. Smith,* 18 P. (2d) (Cal.) 347; *Walker v. Bacon,* 132 Cal. App. 625, 23 P. (2d) 520; *Forsman v. Colton,* 136 Cal. App. 97, 28 P. (2d) 429.

Regrettable as it may appear, Gaut can no more be held under our statute and the weight of authority than can his employer, the oil company.

The judgment is affirmed.

MILLARD, C. J., TOLMAN, MITCHELL, and BEALS, JJ., concur.