[No. 34656. *En Banc.* July 23, 1959.]

THE CITY OF SEATTLE, *Respondent*, v. WILLIAM G. GORDON, *Appellant.*[1]

[1]Reported 342 P. (2d) 604.

*Eddleman & Wheeler* (*Arnold B. Robbins*, of counsel), for appellant.

*A. C. Van Soelen* and *Arthur T. Lane*, for respondent.

OTT, J.—Shortly after 12:15 a. m., March 23, 1957, William G. Gordon, accompanied by his wife, was driving his automobile on Westlake avenue in Seattle. When he arrived at the intersection of Virginia street with Westlake avenue, he made a right turn into Virginia street, and immediately realized that he was driving in the wrong direction on a one-way street. He drove off Virginia street into an alley and, after proceeding down the alley for a short distance, was stopped by a person who appeared before the headlights of his automobile and then came to the driver's window. Gordon was ordered to open his car, but accelerated it instead and drove away. The person who stopped Gordon was an officer of the Seattle police department.

Gordon was charged in the Seattle municipal court (1)

with violation of municipal ordinance No. 80998, § 15, for failing to stop his motor vehicle when requested to do so by an arresting officer, and (2) with violation of ordinance No. 80998, § 45, for reckless driving.

He was found guilty as charged by the municipal court, and appealed to the superior court. The jury returned a verdict of guilty on both counts. From the judgment and sentence entered upon the verdict, Gordon has appealed.

Appellant's contention at the trial of his case, before both the municipal court and the superior court, was that, after he turned into the alley, a "dark shadow" crossed about ten or twelve feet in front of his automobile and that he had to stop to avoid hitting it. The "shadow" then came around to the driver's window and said "open up." Appellant lowered the window two or three inches. He testified:

" . . . I smelled alcohol and at the same time my window was being smashed violently. It was hit with a—well, it could either be a night stick or it might have been a gun or it could have been a rock or anything. And it was hit seven or eight times so I figured the best thing to do was to leave. I was afraid of bodily harm or robbery. . . . "

Appellant assigns error to the court's refusal to give his requested instructions, (1) that scienter is an element of the offense of failing to stop when ordered to do so by an officer, and (2) that his alleged reckless driving was excusable, if a reasonably prudent man, under the same or similar circumstances, would have believed that he was in peril.

Section 15 of ordinance No. 80998 reads in part as follows:

"It shall be unlawful for any person while operating . . . any vehicle, . . . to refuse or neglect to stop when signaled to stop by any peace officer, . . . Any peace officer shall on request produce evidence of his authorization as such. (Rem. Rev. Stat., 6360-126.)" *Cf.* RCW 46.56.190.

■■ At common law, scienter was an element of every crime. When the common law was codified into the criminal statutes, there was a modification of the common-law rule relative to the element of intent, namely, in those criminal offenses regarded as acts *mala prohibita* scienter is not an

element, while in those offenses designated as acts *mala in se* intent is an element.

■ The distinction between those offenses which require scienter (acts *mala in se*) and those *mala prohibita* is that, in the latter group of cases, the legislature may properly say that (1) to require scienter to be proved would defeat the purpose of the act, and (2) the doing of the act itself imperils the public safety or welfare. I Wharton's Criminal Law (12th ed.) 160, § 113.

In *State v. Lindberg*, 125 Wash. 51, 59, 215 Pac. 41 (1923), this court said:

■ "With respect to intent as constituting an element of an offense, there is a well-recognized distinction between statutes denouncing as crime acts *mala in se*, and statutes denouncing as crimes acts *mala prohibita*. In the former, generally speaking, intent is a necessary element, while in the latter it is not so. These principles are not, perhaps, of uniform application in either class, and, perhaps also, less so in the latter than in the former. But the courts generally hold that, where statutes falling within the latter class are in the nature of police regulations, are for the protection of the public, or are intended to promote the general welfare, intent is not a necessary element of the offense, unless the statute in express terms or by apt words so declares. We have ourselves followed this general rule."

■ Whether the legislature intended scienter to be an element of a crime, when it is not specifically defined as an element, is a determination to be made by the courts. 14 Am. Jur. 784, § 24.

■ ■ Resisting arrest was a crime at common law. Scienter was an element. The city ordinance is a codification of that crime. It does not specifically eliminate scienter as an element. If such is to be presumed, it must be because we can infer that the legislative body intended to protect the public safety or promote the public welfare by so doing. The ordinance was enacted to secure compliance with the orders of officers. The purpose is not defeated by requiring officers to establish their identity as such. No public policy is served by eliminating scienter as an element of the crime of resisting arrest. It is the *willful* disobedience of an order

that poses a threat. It is this threat that the ordinance is designed to meet.

■ ". . . If an officer does not disclose his authority and the accused does not know that he is an officer and is attempting to arrest him for an offense, he has a right to resist the arrest with whatever force is necessary." 39 Am. Jur. 510, § 13.

■ Appellant's violation of the city ordinance was an offense *mala in se.* Applying the rule of the *Lindberg* case, intent to resist an officer is a necessary element of the offense, as it is defined by ordinance No. 80998, § 15, *supra.* The court erred when it "concluded that scienter is not an essential element in this case," and refused to instruct the jury with reference thereto.

■ Under the circumstances of this case, there was evidence, if believed by the trier of the facts, that appellant's alleged reckless driving was excusable. The court erred in refusing to instruct the jury in this regard.

For the reasons stated, the judgment is reversed and the cause remanded, with instructions to grant a new trial.

WEAVER, C. J., FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—I dissent. The court instructed the jury as follows:

"In order to find the defendant guilty of the offense charged in Count 1 of the Complaint, you must be satisfied from the evidence beyond a reasonable doubt of each of the following elements:

"1. That on or about March 23, 1957, in the City of Seattle, Washington, the defendant was driving a motor vehicle, and was signaled to stop by a Seattle police officer in uniform;

"2. That the defendant, after having stopped, *willfully* set his vehicle in motion without permission of such officer, and without submitting himself to such questioning or other official action as such officer might desire to take.

"If you are not so satisfied, you should find the defendant not guilty as charged in Count 1." (Italics mine.)

This is a correct statement of the law. The word "willful," as used in the instruction, means "knowingly" (*State*

*v. Bixby*, 27 Wn. (2d) 144, 177 P. (2d) 689) and "intentionally." *Lassiter v. Shell Oil Co.*, 188 Wash. 371, 62 P. (2d) 1096. The instruction, as given, authorized appellant's counsel to argue to the jury his defense theory regarding the identity of the uniformed officer to the same extent as would have the requested instruction. The appellant does not assert that he, in fact, did not do so.

I dissent.

HILL and DONWORTH, JJ., concur with MALLERY, J.

October 5, 1959. Petition for rehearing denied.