[No. 36854.    Department Two.    February 13, 1964.]
THE STATE OF WASHINGTON, *Respondent*, v. JOHN PATRIC,
*Appellant.**

*Andrew L. Ulvestad* and *Robert L. Butler*, for appellant.

*E. Lloyd Meeds*, for respondent.

DONWORTH, J.—John Patric appeals from a judgment and sentence imposed for his conviction of the offense of signing a name other than his true name to an initiative petition.

The League of Women Voters of Washington qualified, under RCW 29.79.010, to solicit signatures of registered voters of the state of Washington in sufficient numbers to

*Reported in 389 P. (2d) 292.

be presented to the Secretary of State for his canvass and determination whether proposed Initiative Measure No. 211 should be placed on the general election ballot November 6, 1962. The league prepared printed petition forms in accordance with the law, and distributed them in various public places where interested voters would be afforded an opportunity to voluntarily sign the proposed form, which contained spaces for 20 signatures.

One such form was placed on the counter in the office of the sheriff for Snohomish County, which contained a direction to the "petition carrier" to "Return this petition as soon as possible to: Mrs. E. A. Glasgow, 712 Wetmore, Everett, Washington."

May 1, 1962, at about 5:15 p.m., John Patric was in the sheriff's office and, in the presence of Officer Gwynn Symmes, signed the form as "Hugo N. Frye, 301D Free Press Park, Snohomish." The signed document, which contained only one additional signature, was delivered by Officer Symmes to Chief Criminal Deputy Roy Lee Arp. The officer, believing that a felony had been committed, delivered the signed instrument to the prosecuting attorney.

May 21, 1962, the prosecuting attorney filed an information charging John Patric as follows:

"That he, the said John Patric, in the County of Snohomish, State of Washington, on or about the 1st day of May, 1962, wilfully, unlawfully and feloniously did sign an initiative petition, to-wit: Initiative Petition No. 211, with other than his true name, to-wit: the name of Hugo N. Frye, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Washington."

He pleaded not guilty. A jury was impaneled. John Patric appeared pro se.

At the trial, it was established that John Patric signed the proposed initiative petition as alleged, "Hugo N. Frye," and that he was a registered voter and registered to vote under the name of John Patric. When exhibit No. 1, the proposed initiative petition, was offered in evidence, he objected to its admission on several grounds, among them,

"I challenge the validity of this document." He testified that he signed the name as he did because it was his pen name; that most people knew him by his pen name, and that he never intended to defraud the Secretary of State or anyone.

The jury returned the following verdict:

"We, the jury, duly empanelled and sworn in the above entitled and numbered cause, do find the defendant, John Patric, guilty of the crime of signing an initiative petition with other than true name."

After the verdict was received, a third party procured counsel who represented appellant on the argument of post-trial motions and when sentence was imposed.

The defendant's motions for arrest of judgment and for a new trial were denied. From the probationary judgment and sentence of a maximum of 10 years' confinement in the state penitentiary[1] imposed upon the verdict, John Patric appeals.

The statute under which appellant was tried and convicted is RCW 29.79.440, which provides:

"Every person who signs an initiative or referendum petition with any other than his true name shall be guilty of a felony."

This appeal presents a single issue: Was the evidence sufficient to sustain the verdict? We think not.

■ The plea of not guilty placed upon the state the duty to prove all the elements of the offense. An essential element to be established by the state was that John Patric unlawfully signed an initiative petition. The evidence conclusively established that the document which John Patric signed never reached the status of a legal petition.

■ RCW 29.79.010 provides the method by which an organization can qualify to solicit signatures. RCW 29.79.120 provides, in part:

---

[1] The execution of the judgment and sentence was suspended and appellant was placed on probation for 3 years, conditioned upon his compliance with five specified terms and conditions. One condition was that appellant serve 20 days in the Snohomish County jail.

"When the person or organization proposing any initiative measure . . . has secured upon any such initiative petition the signatures . . . they may submit said petition to the secretary of state for filing in his office."

RCW 29.79.220 provides, in part:

"Upon filing . . . an initiative petition for submission of a measure to the people, the secretary of state shall canvass the names of the petition. . . ."

RCW 29.79.240 provides:

"The secretary of state shall, while making the canvass, keep a record of all names appearing on an initiative . . . petition which are not registered voters . . . and shall report the same to the prosecuting attorneys of the respective counties where the names were signed to the end that prosecutions may be had for such violations of this chapter."

Exhibit No. 1 was never delivered to the League of Women Voters. The League of Women Voters never presented exhibit No. 1 to the Secretary of State as an official petition in support of its initiative measure. Under the cited sections of the law, only the League of Women Voters could give the signed document the status of a petition, and then only when the league elected to use it by filing it with the Secretary of State.

June 29, 1962, the league did present the petitions which it contended contained the required number of names of registered voters.[2] These were canvassed by the Secretary of State, and the initiative was certified and placed upon the November 6, 1962, election ballot. The document referred to as exhibit No. 1, by statute, never became a petition in support of any initiative.

■ Further, the law does not authorize a sheriff or a prosecuting attorney to canvass the signatures on a petition for an initiative. This duty to canvass the petitions devolves upon the Secretary of State and applies only to those petitions which qualified organizations or persons choose to deliver to him for that purpose. The state failed to establish that exhibit No. 1 was a legal initiative petition;

---

[2] A person could remove his name from a petition any time prior to its being filed with the Secretary of State.

hence, the name "Hugo N. Frye" written thereon by John Patric did not constitute an offense within the purview of the statute (RCW 29.79.440).

The trial court erred in denying appellant's motion in arrest of judgment.

The judgment and sentence is reversed, and the cause remanded with instructions to enter judgment of dismissal.

OTT, C. J., and WEAVER, J., concur.

HAMILTON, J., concurs in the result.

FINLEY, J. (dissenting)—I do not agree with the reasoning of the majority, nor with the proposed dismissal of the case against appellant John Patric. I would agree that the conviction cannot stand, and that a new trial should be granted. However, this is on the ground that the question of intent was not properly submitted for consideration by the jury.

The majority holds that, regardless of his intent, John Patric committed no crime, because he signed a document which never became an "initiative petition," as the latter is defined *ad hoc*, I think somewhat strangely and tortuously, by the majority. Presumably, the majority would find that a crime *had* been committed if Patric's improper signature had escaped notice long enough and had actually been submitted to the Secretary of State by the League of Women Voters (the sponsoring group in this instance). Under this reasoning of the majority (which, as indicated, seems palpably fallacious to me), we would have a situation where the subsequent voluntary act of the League of Women Voters, completely beyond the control of the defendant, becomes the sole determining factor as to whether the previous act violated the statute. Among other things, this appears to me to violate or to be inconsistent with the accepted standard or operating legal principle that an act is either legal or illegal when done, and that if it is legal at the time it is committed it should not become illegal by the subsequent independent and unrelated acts of third parties. *United States v. Fox* (1877), 95 U. S. 670,

24 L. Ed. 538. Conversely, neither should the intervening acts of a prosecutor legalize and make innocent an act which was illegal when it was committed.

Whether or not the petition involved herein is a "legal petition" for other purposes, it seems quite clear to me that the statute requiring the signing of the true name to the "petition" refers to the document *actually available* to the public for signature, and, moreover, refers to such document at the *time* it is signed by voters, or is available by their signatures. Essentially, it seems reasonably obvious and convincing to me that the statute is designed to deter persons from placing fraudulent signatures upon the sheet of paper or printed forms circulated for voter consideration and action. In other words, it just does not seem to me to make good common sense to say that the legislature was concerned only about violations of the prohibition involving those sheets which ultimately find their way to the Secretary of State. There would be no rational reason for such a limitation, as the *act* of signing is made illegal, not the *consequence* of it.

The state established every element of the crime required by the statute excepting only the element of intent. This was removed from the consideration of the jury by the following instruction, assigned as error by the defendant:

"It is not necessary for the State to prove beyond a reasonable doubt, or at all, that the defendant signed the initiative petition by the name of Hugo N. Frye with intent to defraud the State or any other person, if he did so sign his name, nor is it necessary that he knew such would be unlawful. It is sufficient in this regard that it be done purposely and wilfully and with knowledge that such was not his true name."

The only issue then is whether the missing element in the state's case—that of intent to defraud—is one necessary to the violation of RCW 29.79.440.

The distinctions between those criminal statutes which require the element of guilty intent and those which do not were developed in *Seattle v. Gordon* (1959), 54 Wn. (2d) 516, 342 P. (2d) 604, where we said:

"At common law, scienter was an element of every crime. When the common law was codified into the criminal statutes, there was a modification of the common-law rule relative to the element of intent, namely, in those criminal offenses regarded as acts *mala prohibita* scienter is not an element, while in those offenses designated as acts *mala in se* intent is an element.

"The distinction between those offenses which require scienter (acts *mala in se*) and those *mala prohibita* is that, in the latter group of cases, the legislature may properly say that (1) to require scienter to be proved would defeat the purpose of the act, and (2) the doing of the act itself imperils the public safety or welfare. . . .

" . . .

"Whether the legislature intended scienter to be an element of a crime, when it is not specifically defined as an element, is a determination to be made by the courts. . . ."

The double requirement respecting an act *malum prohibitum* is merely a recognition of the necessity of balancing the requirements of the public interest against the individual injustice of punishing unintended violations of the law.

This statute does not meet the *Gordon* case requirements and must be interpreted as requiring the element of intent. The purpose of the act and the public interest thereby represented is two-fold. The ultimate goal is of course to insure that each qualified citizen is limited to one vote in the initiative process. The immediate purpose, however, is both to deter citizens from signing in an unlawful manner and to ease the burden ultimately placed upon the Secretary of State in checking the validity of signatures.

The major interests of the statute are not defeated by requiring the element of intent. The deterrence of citizens from making fraudulent signatures can only prevent wilful violations, and this is what the statute is designed to meet. The burden of the Secretary of State, while possibly lessened to some small degree by forcing the citizen to sign such a petition at his own risk, is not of such importance as to outweigh the interests of the individual who might, with no fraudulent intent, affix a signature not his "true

name." The statute fulfills its purpose when it reaches those citizens who sign the petition in an unlawful manner with the intent to perpetrate a voting fraud upon the people of Washington, either by being counted twice or by unduly hampering or confusing the initiative process.

While the conviction must be reversed upon this ground, I cannot concur with the majority in ordering dismissal of the case against Patric. If he affixed the name of *Hugo N. Frye* to the petition with the intent to defraud or hamper the initiative process, this would constitute a violation of RCW 29.79.440. In my judgment a new trial should be ordered, and the case should be remanded for further proceedings in accord with the views expressed hereinbefore.

May 19, 1964. Petition for rehearing denied.