[No. 44039. En Banc. January 6, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. LINDA MARIE THOMPSON, *Appellant.*

*Dysart, Moore, Tiller & Murray,* by *Daniel J. Murray,* for appellant.

*Jeremy R. Randolph, Prosecuting Attorney,* for respondent.

DOLLIVER, J.—This is an appeal from a conviction for murder in the second degree. The victim was defendant's husband, Wayland D. Thompson. On the day of the killing, the defendant's husband had consumed considerable amounts of alcohol and used drugs excessively. During the evening, he had been driving recklessly with defendant and two other passengers in the car and had struck defendant and threatened to kill her. The car reached the Thompson residence and the two passengers got out and went into the house. Shortly thereafter, shots were heard. Defendant called the sheriff and reported she had shot her husband. At the trial she claimed she had shot him in self-defense.

Defendant was charged by an amended information with causing the death of Wayland Thompson while engaged in the commission of a felony, assault in the second degree. In the trial before a jury, defendant was found guilty of murder in the second degree. We affirm.

Prior to trial, appellant filed a written waiver of jury trial. She gave the following reasons: recent crimes had been committed in the county which had generated public

interest; crimes of kidnapping, rape, and murder had been committed recently in nearby counties; and her appearance and history of drug and alcohol use would not impress a jury favorably.

The statute controlling the waiver of a jury, states:

No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court: *Provided however,* That except in capital cases, where the person informed against or indicted for a crime is represented by counsel, such person may, with the assent of the court, waive trial by jury and submit to trial by the court.

RCW 10.01.060. CrR 6.1(a) states:

Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court.

In *State v. Jones,* 70 Wn.2d 591, 424 P.2d 665 (1967), we held that the withholding of the assent of the court was reversible only on the issue of whether the discretion was clearly untenable or manifestly unreasonable. *State v. Maloney,* 78 Wn.2d 922, 481 P.2d 1 (1971), held that absent a showing that the appellant was prejudiced by having his cause heard before a jury or an indication that the trial court abused its discretion, no reversible error could be found.

Here the trial judge refused to allow the appellant to waive a jury for the following reasons: the seriousness of the crime charged; a jury would prevent the appearance of impropriety, lack of fairness, or injustice; the verdict should represent the thinking of the community as represented by 12 jurors; and a jury would free the court from having to weigh the evidence.

No constitutional rights are here involved (*Singer v. United States,* 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783 (1965)); the trial judge did not abuse his discretion; and we decline appellant's invitation to modify the standards of *Jones* and *Maloney.*

■ Appellant next argues that there was not sufficient evidence to send the case to the jury or to support the verdict. The elements of a crime can be established by both direct and circumstantial evidence. As we stated in *State v. Holbrook,* 66 Wn.2d 278, 279, 401 P.2d 971 (1965):

A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the state's evidence and all inferences that reasonably can be drawn therefrom. Furthermore, the evidence is interpreted most strongly against the defendant and in a light most favorable to the state.

*See also State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Dugger,* 75 Wn.2d 689, 453 P.2d 655 (1969); *State v. Gibson,* 79 Wn.2d 856, 490 P.2d 874 (1971).

The State produced evidence that the defendant reported she shot her husband. There was additional evidence that there were three shots fired with a .38 caliber pistol. Testimony of the State's witnesses revealed that the defendant and her husband had been drinking on the evening of the shooting, that they had argued violently and that he had struck her. While the defendant claims that the shooting was done in self–defense, she apparently was disbelieved by the jury. *See State v. Turpin,* 158 Wash. 103, 290 P. 824 (1930). In reviewing the record, we are satisfied that there was sufficient evidence to send the case to the jury and to support the verdict.

Finally, appellant urges that we overrule *State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966). The relevant statutes considered in *Harris* are, in part:

The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

(1) With a premeditated design to effect the death of the person killed, or of another; or

(2) By an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without a premeditated design to effect the death of any individual; or

(3) Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree . . .

RCW 9.48.030.

The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or

(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030.

RCW 9.48.040.

■ In *Harris,* we held that, where the precedent felony in a felony murder is an assault and inherent in the homicide, the assault does not merge into the resulting homicide. Most states which have considered the question have adopted the merger rule, resulting in a holding that only felonies independent of the homicide can support a felony murder conviction. *State v. Mosley;* 84 Wn.2d 608, 528 P.2d 986 (1974). Washington and Maine appear to be the only jurisdictions which have considered and rejected the merger rule. *See* Annot., 40 A.L.R.3d 1341 (1971). Both appellant and the courts of other jurisdictions consider this to be a matter of statutory interpretation rather than one of constitutional rights.

In *State v. Mosley, supra,* we granted a petition to review the *Harris* rule. Before the day set for hearing, the petitioner escaped from custody. Consequently, the petition was dismissed.

While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state. The legislature recently modified some parts of our criminal code, effective July 1, 1976. However, the statutory context in question here was left unchanged.

The rejection by this court of the merger rule has not been challenged by the legislature during the nearly 10

years since *Harris,* nor have any circumstances or compelling reasons been presented as to why we should overrule the views we expressed therein.

The judgment is affirmed.

STAFFORD, C.J., HAMILTON and BRACHTENBACH, JJ., and HALE, J. Pro Tem., concur.

UTTER, J. (dissenting)—The majority decision, by giving continuing approval to use of the doctrine of felony murder in instances where the sole felony providing the basis for implementation of the doctrine is the assault upon the victim which was the direct cause of death, leaves us in a position shared by virtually no other state. I am convinced that we are compelled by both the due process and equal protection clauses of the United States Constitution to abandon this isolated position and join with the vast majority of ·United States jurisdictions in holding the felony–murder rule applicable only to instances in which the underlying felony giving rise to the operation of the rule is independent in fact of the homicide.

The facts of this case illustrate the injustice of the rule. At the time of his death Mr. Thompson and the appellant had been married nearly 2 years. During 1973 and 1974, while recovering from injuries sustained in an automobile accident, Mr. Thompson began to abuse the drugs which had been prescribed for him and to engage in heavy drinking. This situation had steadily worsened, and Thompson tended to be violent, particularly toward his wife, while intoxicated or using drugs. On the night of his death, the defendant and two friends were in the company of the victim for most of the evening. Uncontroverted evidence established that the victim had been drinking throughout the afternoon and evening and had used drugs excessively during the same period, including at one point taking a quantity of Nembutal (a barbiturate) by injection.

Late in the evening the group left for a drive. Despite his obvious intoxication, Mr. Thompson insisted upon driving.

Throughout this excursion the decedent drove in an extremely reckless manner, reaching speeds of 90 miles per hour and swerving back and forth across the road. On at least one occasion he forced an oncoming car to pass him on the right. His passengers pleaded with him to exercise greater caution and to allow his wife to drive. Thompson then became extremely abusive and threatened to kill the occupants of the car. In an effort to gain control of the vehicle, the appellant on several occasions turned off the car's ignition. Each time this was done the victim struck his wife, sometimes with his fists and, on at least one occasion, with a wine bottle. The two passengers and the defendant all testified to the effect that the appellant did not at any time return her husband's threats or act in an abusive manner toward him. Rather she endeavored to calm her husband and to gain control of the vehicle, presumably for the protection of all concerned.

Eventually the group arrived back at the Thompson residence. The two passengers left the car immediately and did not see or hear what took place thereafter. The appellant and Thompson remained seated in the car which was then parked in the driveway of their residence. The sole evidence as to subsequent events is a product of the testimony of the appellant, who took the stand on her own behalf. According to the appellant, her husband continued his threats and further stated that he was "going to take this car out and kill everybody." Mrs. Thompson continued to try to calm her husband and endeavored to gain control of the vehicle. Thompson responded by striking her several more times, both with his fists and the wine bottle. According to her testimony, the defendant then produced a pistol which she carried in her purse and after further threats and physical abuse, shot and killed her husband in an effort to save her own life. Following her arrest Mrs. Thompson was examined by a physician and treated for cuts, bruises, abrasions, loose teeth, and soreness suffered in the altercation. It is apparent from the record that the only assault committed by the victim was the act of discharging the pistol in the

direction of the defendant several times in succession. The victim's death was a direct result of those wounds.

The prosecutor initially charged appellant with intentionally causing the death of her husband and with causing the death of her husband while engaged in the commission of a felony (assault in the second degree). Later, an amended information was filed charging her only with felony murder. She was convicted of that charge and this appeal followed.

The felony–murder rule was developed in England as a part of the early common law of homicide. At that time the doctrine was broad in scope and applied whenever one whose conduct while engaged in the commission of a felony, brought about a death. The result of its use was guilt for murder. The rule operated without regard to the actual intent of the felon, the nature of the felony, or the likelihood that death might result from the defendant's action. The felony–murder rule, subject to some limitations, continues to function in the same way, supplying a substitute for the elements of specific intent and premeditation. The justification for this strict liability has traditionally been said to be the generally malicious state of mind of the actor proven to establish guilt of the felony. This underlying general felonious intent having been established, it is thus felt unnecessary to prove a specific mental state as to the homicide itself. Once it is established that a defendant has the requisite intent sufficient to establish guilt as to the underlying felony, the felony–murder rule then operates as a conclusive presumption that the defendant possessed the intent necessary for murder.

At the time the rule developed all felonies were punishable by death; thus, the use of the felony–murder rule was generally not of serious consequence to the defendant. As the number and nature of activities constituting felonies increased, and the penalties for the convictions thereof began to vary, the rule came to have a progressively greater impact upon the criminal law. The result of this greater impact has been an almost universal effort to restrict the

harsh and often logically unsupportable consequences of the rule. The doctrine of felony murder was abolished in its entirety by Great Britain almost 20 years ago. *See* English Homicide Act, 5 & 6 Eliz. 2, c. 11, § 1 (1957). It continues to survive in various forms in the United States.[1] However, American jurisdictions have limited the operation of the rule in a number of ways, including: limiting its application only to specific felonies or categories of felonies; introducing a strict proximate cause requirement; narrowing the scope of the time during which a felony is said to be in the process of commission; and finally, by requiring that the underlying felony be independent of the homicide. *See generally* W. LaFave & A. Scott, *Handbook on Criminal Law* 545 (1972); R. Perkins, *Criminal Law* 40 (2d ed. 1969); Note, *The California Supreme Court Assaults the Felony–Murder Rule*, 22 Stan. L. Rev. 1059 (1970); Note, *The Doctrine of Merger ·in Felony–Murder and Misdemeanor–Manslaughter*, 35 St. John's L. Rev. 109 (1960); Note, *Defining the Felon's Accountability Under the Felony–Murder Rule*, 7 Loyola U. L.J. 529 (1976); Comment, *Merger and the California Felony–Murder Rule*, 20 U.C.L.A. L. Rev. 250 (1972).

---

[1]Several American commentators have actively suggested that the entire rule also be abandoned in this country. *See, e.g.,* Moreland, *A Re–Examination of the Law of Homicide in 1971: The Model Penal Code,* 59 Ky. L.J. 788, 803–04 (1971). It is clear that the operational effect of the rule is to create a conclusive statutory presumption of intent to kill when death occurs in the course of another felony. *See* Comment, *Merger and the California Felony–Murder Rule,* 20 U.C.L.A. L. Rev. 250, 254–56 (1972). As such the rule may well be defective under recent decisions of the United States Supreme Court and this court which limit the use of presumptions in the criminal area.

In *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), the Supreme Court enunciated the principle that any presumption which affirmatively shifts the burden of persuasion as to a particular element of the offense charged to the defendant violates due process. The court therein relied upon *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), holding that the due process clause requires proof beyond a reasonable doubt by the prosecution of every element necessary to constitute the crime charged.

Our court has held that in order for a criminal presumption to be valid the fact presumed (here intent to kill) must follow from the facts proven (commission of a felony) beyond a reasonable doubt. *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976); *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974). It is not

The only act of the appellant relied upon to establish the felony necessary for conviction of murder in the second degree under RCW 9.48.040(2)[2] was the shooting itself, which, standing alone, constitutes the crime of second–degree assault. RCW 9.11.020(4).[3] The application of the felony–murder rule thus eliminated the necessity for proof by the state of the element of specific intent, which is the distinguishing aspect, in our statutory scheme, of murder in the second degree. Absent the proof of acts constituting an assault, the appellant could not have been found guilty of murder. In this situation it is apparent that the single act of shooting the victim can constitute one crime and one crime only. There exists no general malicious intent based upon proof of the commission of a separate felony which may be "transferred" from that crime to an independent homicide committed in the course thereof. The existence of such a separate intent is an analytical necessity to an inference of intent to kill. For this reason the felony–murder rule should not apply where the underlying felony sought to be used as a basis for the operation of the rule is an offense included in fact in the homicide itself. To hold otherwise constitutes, as Chief Justice Cardozo observed, "a futile

clear that the felony–murder rule, a conclusive presumption, could withstand an assault based upon these two lines of cases. We need not, however, reach that broad issue here.

[2]RCW 9.48.040 reads in pertinent part as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

"(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or

"(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030."

[3]"9.11.020 . . . Every person who, under circumstances not amounting to assault in the first degree—

". . .

"(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm . . .

". . .

"Shall be guilty of assault in the second degree . . ."

attempt to split into unrelated parts an indivisible transaction." *People v. Moran,* 246 N.Y. 100, 104, 158 N.E. 35 (1927).

This conclusion has been reached by every jurisdiction in this country, with the exception of the State of Washington, required to directly face the issue.[4] The states have formulated their conclusions in slightly different ways. *See, e.g., People v. Huter,* 184 N.Y. 237, 77 N.E. 6 (1906) (where the only felony committed apart from the homicide itself is the assault upon the victim, the assault "merges" with the killing and does not provide a basis for operation of the felony–murder rule); *State v. Fisher,* 120 Kan. 226, 243 P. 291 (1926) (the felony must be so distinct as to not be an ingredient of the homicide). *See also People v. Ireland,* 70 Cal. 2d 522, 450 P.2d 580, 75 Cal. Rptr. 188 (1969); *State v. Branch,* 244 Ore. 97, 415 P.2d 766 (1966); *State v. Essman,* 98 Ariz. 228, 403 P.2d 540 (1965). The reasoning of these decisions is summarized by the California Supreme Court.

> We have concluded that the utilization of the felony–murder rule in circumstances such as those before us extends the operation of that rule "beyond any rational function that it is designed to serve." . . . To allow such use of the felony–murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which

---

[4]The cases are collected in an annotation, 40 A.L.R.3d (1971). The majority suggests that our position is shared by the state of Maine. However, the Maine Supreme Court has not clearly enunciated its position. In *State v. Trott,* 289 A.2d 414 (Me. 1972), that court suggested in a footnote that the act of carrying a man to a wharf and then casting him unconscious into the sea would constitute an aggravated assault sufficient to support a conviction of felony murder. The statement cannot be said to have precedential value for two distinct reasons. First, proper objection to the felony–murder instruction had not been made at trial. The court therefore expressly held that the issue had not been preserved for appeal. Second, the court noted in the same footnote that the defendant had also committed two other felonies against the victim (assault with intent to rob and robbery) prior to the "assault" which occurred on the wharf, neither of which constituted an act directly responsible for the victim's death and both of which supported a finding of felony murder.

includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law.

*People v. Ireland, supra* at 539.

In *State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966), a majority of this court declined to adopt this position, taking the view that the legislature had, by establishing degrees of murder and limiting the first–degree felony–murder rule to only specific crimes, effectively eliminated the compelling need for the merger rule which had been found to exist under New York's statutory scheme. In so doing the majority overlooked the fact that the merger rule has been expressly adopted in the state of Oregon *(see State v. Branch, supra)*. That state's homicide statutes are virtually identical to our own.

The dissenters in *Harris* pointed out that the use of the rule approved by the majority would effectively convert into second–degree murder any crime properly viewed as manslaughter, because manslaughter itself is a felony, and that prevention of precisely such a result was the purpose of the New York court in adopting the felony–murder merger rule. (*See State v. Harris, supra* at 936–38, Hunter, J., dissenting.)

I believe it clear that the underpinnings of the *Harris* dissent and the decisions of those courts adopting a merger rule, or its functional equivalent, are far more substantial than those recognized by the majority in *Harris.* Implicit in these holdings is a recognition that any statutory definition of murder, as a crime malum in se, must include an element of specific intent. A statutory formulation which eliminates the requirement of establishing this essential element is fundamentally defective and therefore violative of the defendant's right to substantive due process. *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970); *Seattle v. Gordon,* 54 Wn.2d 516, 342 P.2d 604 (1959). Where, as here, there can fairly be said to have been but one culpable act committed by the appellant, the use of the felony–murder rule effectively obviates the necessity to establish any element of intent in support of the conviction

because the defendant has committed no distinct felony which provides a basis for transfer of felonious intent. The result is that Mrs. Thompson was convicted of murder in the second degree without the establishment of any distinct felonious intent, a requirement for the operation of the conclusive presumption of intent to kill established by the felony–murder rule.

To summarize, murder is a crime malum in se. Conviction of that crime requires proof of acts resulting in death coexisting with proof, from some source, of specific intent. *State v. Turner, supra; Seattle v. Gordon, supra.* This intent is found, in the case of felony murder, in the generally malicious mind evidenced by proof of guilt as to a distinct felony involving another act committed with appropriate felonious intent. The act of assault which here resulted in death is not such a separate crime. The act of "assault" is, in fact, the murder. Thus, in this case there exists no separate actus reus coupled with a felonious intent which may be "transferred" to the act resulting in death. *People v. Moran, supra; State v. Fisher, supra; People v. Ireland, supra.* The result is conviction of murder by virtue of proof of an act resulting in death. The crucial element of proof—the existence of a particular intent, coupled with the specific act—is thus eliminated. For these reasons any formulation of our homicide statutes which allows conviction of felony murder to be based upon an underlying felony, which is an offense *included in fact* in the homicide, is violative of substantive due process and therefore fatally defective.

The failure to limit the operation of the rule is equally violative of the Fourteenth Amendment right to equal protection of the laws. The net result of this court's decision in *Harris* is to vest in the prosecutor a degree of discretion which is prohibited by the principles enunciated by this court in a number of cases.[5] *See State v. Collins,* 55 Wn.2d

[5]The majority has contended that the legislature's failure to respond to our rejection of the merger rule in *State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966),

469, 348 P.2d 214 (1960); *State v. Kanistanaux,* 68 Wn.2d 652, 414 P.2d 784 (1966); *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970); *Gardner v. Smith,* 81 Wn.2d 365, 502 P.2d 333 (1972).

In *Collins* (holding that in all cases where it is applicable the negligent homicide statute supersedes the manslaughter statute), this court stated at page 470:

> The principle of equality before the law is inconsistent with the existence of a power in a prosecuting attorney to elect, from person to person committing this offense, which degree of proof shall apply to his particular case.

Similarly, in *Gardner,* at page 366, this court reiterated the principle first enunciated in *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956), quoting from that case as follows:

> A statute which prescribes different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations is violative of the equal protection clause of the fourteenth amendment of the United States constitution.

by altering our homicide statute in the course of recent revisions to the criminal code, is indicative of a state policy that the *Harris* rule be retained. Because I find the adoption of a merger rule to be a constitutional necessity, this argument is not determinative. However, it should be observed that our criminal code revisions, as initially presented to the legislature in 1970, contained a homicide provision which read as follows: "(1) A person is guilty of murder when . . . (c) he commits or attempts to commit a forcible felony *other than manslaughter or assault,* and, in the course [thereof] . . . recklessly causes the death of a person . . ." (Italics ours.) Revised Washington Criminal Code (Dec. 3, 1970 Proposal) Section 9A.32-.020. The RWCC (often referred to as "the Orange Code") was the product of 3 years' work by the Judiciary Committee of the Washington Legislative Council and a Citizens' Advisory Committee representing a broad cross section of individuals concerned with our criminal law. Passage of this code was delayed pending submission of an alternative set of bills prepared by the state prosecutors' association which was submitted to the legislature in 1973. This proposed code eliminated the language precluding application of the felony–murder rule to assault and manslaughter which had been a part of the "Orange Code." The provision ultimately adopted and referred to by the majority here was thus introduced to the legislature by a group representing those persons vested with a constitutionally impermissible degree of discretion as a result of that same provision. I therefore do not find the majority's argument to be particularly persuasive. A discussion of the evolution of our new criminal code may be found in G. Golob and G. Mooney, Revised Criminal Code Training and Seminar Manual, Washington State Criminal Justice Training Commission (1976).

In this instance, on the basis of proof of precisely the same acts on the part of the defendant (*i.e.,* the shooting of the decedent resulting in his unintended death), the prosecutor was free at his discretion to charge assault in the second degree, or manslaughter, or murder in the second degree. The necessity to prove specific intent, the key element distinguishing manslaughter or murder in the second degree in our statutory system, is eliminated in these types of cases by use of the felony–murder rule. Thus the prosecutor could, by proving precisely the same facts, subject the defendant to substantially different penalties based upon varying proofs, depending upon his own judgment as to the appropriate charge. The broad discretion which results in this instance creates a possibility for unequal treatment under the law which cannot pass constitutional muster.

*State v. Harris, supra,* should be overruled and Washington should join the other states of this nation which have rejected this doctrine.

ROSELLINI, HUNTER, and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing denied March 18, 1977.