334

[Nos. 43326-1-I; 43362-8-I.   Division One.   November 22, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. FELIPE JOSEPH RAMOS, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MARIO ALEJANDRO MEDINA, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant Ramos.

*Christopher H. Gibson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant Medina.

*Norm Maleng, Prosecuting Attorney*, and *Deric Martin* and *James M. Whisman, Deputies*, for respondent.

¶1 ELLINGTON, A.C.J. — The mandatory joinder rule prohibits successive prosecutions for related crimes unless applying the rule would defeat the ends of justice. Here, Felipe Ramos and Mario Medina were charged with first

degree intentional murder. They were convicted of felony murder as a lesser included offense. Their convictions must be vacated under the recent decision in *In re Personal Restraint of Andress*,[1] which held the felony murder statutes may not be invoked where assault is the predicate felony.

¶2 The State seeks to retry both defendants on manslaughter charges. The only question posed here is whether the joinder rule prohibits the filing of such charges and requires us to dismiss with prejudice. *Andress* represented an unexpected change in long-standing decisional law and implicates the ends of justice exception to the rule. The convictions are vacated, and we remand for further proceedings consistent with this opinion.

## FACTS

¶3 In 1997, Mario Medina lived with his sister Maria and her ex-husband, Felipe Ramos. One day Maria was late for work at Motel 6, and her manager, Joe Collins, sent her home early. Medina and Ramos decided to confront Collins.

¶4 First, they retrieved a gun. Then they drove to the motel, found Collins' apartment, and knocked on his door. When Collins answered, Medina asked him if he had a problem with Maria. Before Collins could answer, either Ramos or Medina shot him in the head.[2]

¶5 Ramos and Medina were charged with first degree intentional murder and tried jointly. The State pursued an accomplice liability theory. The jury found the defendants guilty of the lesser included offense of second degree felony murder, based on the predicate offense of second degree assault.

---

[1] 147 Wn.2d 602, 56 P.3d 981 (2002).

[2] Medina confessed to shooting Collins, but later recanted his confession. At trial, each claimed the other retrieved the gun and shot Collins.

¶6 Both men appealed, raising issues related to the accomplice liability instruction.[3] Their appeals were first stayed pending this court's decision on rehearing in *State v. Nguyen*.[4] This stay was lifted after the Supreme Court issued its decision addressing the same accomplice liability instruction in *State v. Cronin*.[5] A second stay was issued pending the Supreme Court's decision addressing harmless error analysis in cases with an improper accomplice liability instruction, *State v. Brown*.[6] Yet another stay was ordered pending the decision in *Andress*. Finally, a stay was ordered pending the decision in *State v. Hanson*[7] (holding *Andress* applies to all cases not yet final). This final stay was lifted in July of this year, and briefing and argument were undertaken on the joinder issue.[8]

¶7 In *Andress*, the Supreme Court held that under the felony murder statutes,[9] assault cannot serve as the predicate crime for felony murder.[10] In *Hanson*, the court held that its decision in *Andress* applies to all cases not yet final when *Andress* was decided.[11] Ramos and Medina were convicted of felony murder based on assault, and there has been no final decision on their appeals. The ruling in *Andress* unambiguously applies to them, and we vacate their convictions.

---

[3] Ramos also argued insufficiency of the evidence and insufficient specificity in his sentence regarding his community placement obligation.

[4] 94 Wn. App. 496, 972 P.2d 573, 988 P.2d 460 (1999).

[5] 142 Wn.2d 568, 14 P.3d 752 (2000).

[6] 147 Wn.2d 330, 58 P.3d 889 (2002).

[7] 151 Wn.2d 783, 91 P.3d 888 (2004).

[8] Ramos moved to stay his appeal yet again pending Supreme Court review of *State v. Gamble*, 118 Wn. App. 332, 72 P.3d 1139 (2003). The motion was denied. In *Gamble*, Division Two remanded a similar case for resentencing on manslaughter charges on grounds that first degree manslaughter is a necessarily included lesser offense of second degree felony murder by assault. *Id.* at 334, 339-40. The court did not remand for a new trial, nor discuss the mandatory joinder rule. Here, the State expressly declined to rely on the analysis in *Gamble*.

[9] RCW 9A.32.030(1)(c), .050(1)(b).

[10] 147 Wn.2d at 615-16.

[11] 151 Wn.2d at 791.

## DISCUSSION

¶8 The only issue before us is whether the State may institute further proceedings on remand. Double jeopardy prohibits retrial on the original charges. The State seeks to file new charges of manslaughter. Ramos and Medina contend new charges are barred by the mandatory joinder rule.[12]

■ ¶9 The rule requires that related offenses must be joined for trial. "Offenses are related if they are within the jurisdiction and venue of the same court and are based on the same conduct. 'Same conduct' is conduct involving a single criminal incident or episode."[13] A defendant who has been tried for one offense may move to dismiss a later charge for a related offense, and the motion must be granted unless the court finds "that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, *or for*

---

[12] The mandatory joinder rule is set out in CrR 4.3.1:

**(b) Failure to Join Related Offenses.**

(1) Two or more offenses are related offenses, for purposes of this rule, if they are within the jurisdiction and venue of the same court and are based on the same conduct.

(2) When a defendant has been charged with two or more related offenses, the timely motion to consolidate them for trial should be granted unless the court determines that because the prosecuting attorney does not have sufficient evidence to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted. A defendant's failure to so move constitutes a waiver of any right of consolidation as to related offenses with which the defendant knew he or she was charged.

(3) A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for consolidation of these offenses was previously denied or the right of consolidation was waived as provided in this rule. The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

[13] *State v. Watson*, 146 Wn.2d 947, 957, 51 P.3d 66 (2002) (citing *State v. Lee*, 132 Wn.2d 498, 503, 939 P.2d 1223 (1997)).

*some other reason, the ends of justice would be defeated if the motion were granted.*"[14]

¶10 The State concedes that the proposed manslaughter charges are related to the felony murder charges. The State maintains, however, that the ends of justice exception applies here.

¶11 Only a few cases have discussed the ends of justice exception. In *State v. Carter*,[15] lacking any other source of guidance, we analogized to civil rules governing relief from judgment. CR 60(b)(11) allows relief from a judgment for " '[a]ny other reason justifying relief from the operation of the judgment.' "[16] We noted that under Washington cases, and under cases interpreting the identical federal provision, Fed. R. Civ. P. 60(b)(6), the rule " 'vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' " but that " 'extraordinary circumstances' must be shown to exist to gain relief under Fed. R. Civ. P. 60(b)(6)."[17] We held that to invoke the ends of justice exception to the mandatory joinder rule, "the State must show there are 'extraordinary circumstances' warranting its application."[18] We then concluded no such circumstances existed in Carter's case:

> While we can conceive of a scenario where through no fault on its part the granting of a motion to dismiss under the rule would preclude the State from retrying a defendant or severely hamper it in further prosecution, such is not the case here. The State can retry Carter on the original charge.[19]

---

[14] CrR 4.3.1(b)(3) (emphasis added).

[15] 56 Wn. App. 217, 783 P.2d 589 (1989).

[16] *Id.* at 223.

[17] *Id.* (quoting *Klapprott v. United States*, 335 U.S. 601, 615, 69 S. Ct. 384, 93 L. Ed. 266 (1949); *Ackermann v. United States*, 340 U.S. 193, 200, 71 S. Ct. 209, 95 L. Ed. 207 (1950)).

[18] *Id.*

[19] *Id.*

¶12 The Supreme Court adopted and applied the *Carter* reasoning in *State v. Dallas*.[20] In that case, the State charged a juvenile with third degree possession of stolen property. Then, at the close of its case, the State successfully moved to substitute a charge of third degree theft. On appeal, the State conceded its amendment was untimely; the only issue was whether the reversal should be with or without prejudice. The State sought remand to allow a particularized inquiry into the circumstances surrounding the State's failure to charge the proper crime. The court declined to remand and dismissed with prejudice, observing that the rule operates as a limit on the prosecutor independent of the prosecutor's intent: "Whether the prosecutor intends to harass or is simply negligent in charging the wrong crime, [former] CrR 4.3(c) applies to require a dismissal of the second prosecution."[21]

¶13 Applying the reasoning in *Carter*, the *Dallas* court held that the extraordinary circumstances required to invoke the ends of justice exception "must involve reasons which are extraneous to the action of the court or go to the regularity of its proceedings."[22] The court rejected the State's argument because "[t]he case before us involves a very ordinary mistake. Given its facts, there is no credible argument that extraordinary circumstances existed and no reason to allow this case to go back to the trial court."[23]

¶14 *Carter* and *Dallas* leave two clear messages: first, for the exception to apply, circumstances must be extraordinary; and second, those circumstances must be

---

[20] 126 Wn.2d 324, 333, 892 P.2d 1082 (1995).

[21] *Id*. at 332. This interpretation is consistent with the *ABA Standards for Criminal Justice* commentary which describes the mandatory joinder rule as "intended to protect defendants from successive prosecutions for unified conduct, particularly when the only reason for the several prosecutions is to hedge against the risk of an unsympathetic jury at the first trial, to place a hold upon a person after he has been sentenced to imprisonment, or simply to harass by multiplicity of trials." ABA Standards for Criminal Justice 13-2.3 (2d ed. Supp. 1986) (internal quotation omitted).

[22] *Id*. at 333.

[23] *Id*.

extraneous to the action or go to the regularity of the proceedings. This suggests that wherever else the exception may operate, it may apply when truly unusual circumstances arise that are outside the State's control.

¶15 Such is the case here. In requesting instructions on the lesser-included offense of felony murder, the State relied on nearly three decades of cases interpreting the statutes defining murder when death occurs in the course of a felony. In 1966, in *State v. Harris*,[24] the Supreme Court rejected the argument that the assault merged into the homicide and held the statutes authorized prosecution for felony murder based on assault as the predicate felony. In 1976, the legislature revised the criminal code. In 1977, in *State v. Thompson*,[25] the court refused to overrule *Harris* and reaffirmed its rejection of the merger doctrine. In its opinion in *Thompson*, the court observed that the 1976 revisions did not change the felony murder statutes in any relevant way:

> While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state. The legislature recently modified some parts of our criminal code, effective July 1, 1976. However, the statutory context in question here was left unchanged.
>
> The rejection by this court of the merger rule has not been challenged by the legislature during the nearly 10 years since *Harris*, nor have any circumstances or compelling reasons been presented as to why we should overrule the views we expressed therein.[26]

Later cases continued to reject the merger doctrine where assault was the predicate crime for felony murder.[27]

---

[24] 69 Wn.2d 928, 932-33, 421 P.2d 662 (1966).

[25] 88 Wn.2d 13, 558 P.2d 202 (1977).

[26] *Id.* at 17-18.

[27] *See State v. Wanrow*, 91 Wn.2d 301, 588 P.2d 1320 (1978) (reaffirming refusal to apply merger doctrine to crime of felony murder); *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (1991) (reiterating refusal to abandon felony murder

¶16 While these cases reflected a minority view among states that had confronted the issue,[28] our high court adhered to the felony murder doctrine with unwavering consistency until 2002. Then, in *Andress*, the court held the 1976 amendments to the criminal code had never been properly examined and concluded that the legislature did not intend assault to serve as the predicate felony for murder.[29]

¶17 For the court to abandon an unbroken line of precedent on a question of statutory construction after more than 25 years is highly unusual, and the decision to do so was certainly extraneous to the prosecutions of Ramos and Medina. This is not a case in which the State negligently failed to charge a related crime or engaged in harassment tactics. Rather, the State filed charges and sought instructions in accordance with long-standing interpretations of state criminal statutes. The fact that the convictions thus obtained must now be vacated is the result of extraordinary circumstances outside the State's control.

¶18 Further, Ramos and Medina cannot be retried on the original charge, because they were implicitly acquitted of first degree intentional murder when the jury returned a verdict on the lesser included offense.[30] Nor can they be retried on the lesser included offense of second degree

doctrine). The courts of appeal have also repeatedly rejected challenges to the propriety of assault as the predicate crime for felony murder. *See State v. Safford*, 24 Wn. App. 783, 787-90, 604 P.2d 980 (1979); *State v. Theroff*, 25 Wn. App. 590, 593-95, 608 P.2d 1254, *rev'd on other grounds*, 95 Wn.2d 385, 622 P.2d 1240 (1980); *State v. Heggins*, 55 Wn. App. 591, 601, 779 P.2d 285 (1989); *State v. Creekmore*, 55 Wn. App. 852, 858-59, 783 P.2d 1068 (1989); *State v. Goodrich*, 72 Wn. App. 71, 77-79, 863 P.2d 599 (1993); *State v. Bartlett*, 74 Wn. App. 580, 588, 875 P.2d 651 (1994), *aff'd on other grounds*, 128 Wn.2d 383, 907 P.2d 1196 (1995); *State v. Duke*, 77 Wn. App. 532, 534, 892 P.2d 120 (1995).

[28] *See, e.g., Thompson*, 88 Wn.2d at 23 (Utter, J., dissenting).

[29] 147 Wn.2d at 615-16. In the wake of *Andress*, the legislature amended the felony murder statutes to reinstate felony murder based on assault. The State acknowledges the new amendment does not apply to Ramos and Medina.

[30] *See Price v. Georgia*, 398 U.S. 323, 328-29, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) (jeopardy attaches when acquittal is implied by conviction of lesser included offense, when the jury had full opportunity to return a verdict on the greater charge); *State v. Linton*, 122 Wn. App. 73, 80, 93 P.3d 183 (2004) (double

intentional murder, because the jury expressly found that the State failed to prove they acted with intent to cause Collins' death.[31] Thus, if the ends of justice exception does not apply, Ramos and Medina cannot be prosecuted for killing Joe Collins in the course of an assault.

¶19 This case therefore presents a "scenario where through no fault on its part the granting of a motion to dismiss under the rule would preclude the State from retrying a defendant or severely hamper it in further prosecution."[32]

■ ¶20 Other factors may be relevant to determining the justice of further proceedings, and whether the ends of justice would be defeated by dismissing manslaughter charges against Ramos and Medina is, in the final analysis, a determination for the trial court. But we hold the mandatory joinder rule does not require this court to dismiss with prejudice now.

¶21 We vacate Ramos' and Medina's convictions and remand for further proceedings consistent with this opinion.[33]

Cox, C.J., and Agid, J., concur.

---

jeopardy prohibits a second trial on first degree assault when defendant was convicted of the lesser included offense of second degree assault).

[31] The court instructed the jury that, should they fail to return a guilty verdict on the first degree murder charge, they should consider the lesser included offense of second degree murder. The to convict instructions for second degree murder included the alternative elements of intentional murder ("2(a)") and felony murder ("2(b), (c), and (d)"). Clerk's Papers at 130, 132. If the jury returned a guilty verdict on second degree murder, it was required to say whether the State had proved element 2(a) beyond a reasonable doubt. The jury answered in the negative. The verdict form also asked whether the jury unanimously agreed the State had proved elements 2(b), (c), and (d) beyond a reasonable doubt, to which the jury answered "Yes." Clerk's Papers at 147-48.

[32] *Carter*, 56 Wn. App. at 223.

[33] Should the court allow new charges, and should the State again proceed under an accomplice liability theory, the jury instructions must conform to the requirements of *State v. Roberts*, 142 Wn.2d 471, 509-13, 14 P.3d 713 (2000) and *State v. Cronin*, 142 Wn.2d 568, 578-82, 14 P.3d 752 (2000).