[No. 7652-3-I.    Division One.    June 23, 1980.]

THE CITY OF SEATTLE, *Respondent*, v. JAMES KOH, *Appellant.*

*Robert O. Conoley* and *Breskin, Rosenblume & Robbins,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Darcy Goodman, Assistant,* for respondent.

DURHAM–DIVELBISS, J.—James Koh appeals from his conviction in King County Superior Court for "changing the occupancy of his apartment building without first securing a permit from the Building Department," in violation of section 301(a) of the Seattle Building Code (Code).

Koh desired to build a multiple–unit apartment house on property located at 4234 8th Avenue N.E., Seattle. On December 31, 1975, Koh submitted plans for a proposed 15–unit apartment to the Seattle Building Department (Department). The plan called for 35 bathtubs, 35 lavatories, and 35 kitchen sinks. The building inspector refused to approve the proposed plans until a number of corrections

were made, including the removal of excess sinks. Approval was eventually given to a plan for a building containing 13 apartments, each of which was to contain one kitchen, one living room, three bedrooms, three closets, three bathrooms and three entry doors. The building was inspected and given approval for occupancy on January 21, 1977. At the time, the building did not appear to be divided into more than the permitted 13 3–bedroom units.

After conducting inspections of the building in May and June 1978, the Department concluded that Koh had illegally subdivided his building into 38 separate units, and requested him to take action to conform its use to that permitted by the plans. Koh refused to do so, and was subsequently convicted of violating the Code, in both district and Superior Court.

Koh first argues that section 301(a) of the Code, which he was charged with violating, is unconstitutionally vague. In order to escape being branded as vague under the due process clause, a statute or ordinance must "contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment.'" *Bellevue v. Miller,* 85 Wn.2d 539, 543, 536 P.2d 603 (1975), quoting from *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522 (1967). Section 301(a) of the Code reads as follows:

> It shall be unlawful to erect, construct, enlarge, alter, repair, move, improve, remove, *change the occupancy of,* or demolish any building or structure in the city, or allow the same to be done, without first obtaining a separate building permit for each such building or structure from the Building Official.

(Italics ours.)

Koh was charged with "changing the occupancy" of his building without the required permit. Standing alone, this term may not be readily understandable. However, the term "occupancy" is defined in section 416 of the Code as "the purpose for which a building, or part thereof, is used or intended to be used." When the legislative body provides

a definition for a statutory term, it is that definition to which a person must conform his conduct. *Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978). Thus, to "change the occupancy" is to bring about a change in the permitted use of a building.

The limits within which any particular building may lawfully be used are defined by the approved plans, building–use permit, and certificate of occupancy. A change in use or occupancy, therefore, occurs when a building is used in a manner not permitted by those documents. We conclude that the term "change the occupancy," when construed with regard to its statutory definition, can be understood by persons of ordinary intelligence, and is not, therefore, unconstitutionally vague. *Seattle v. Buchanan, supra.*

Koh also argues that the criminal complaint filed against him was vague and indefinite, arbitrary and capricious, and that he was unable to determine the offense with which he was charged.

The complaint followed the wording of section 301(a):

> [The defendant committed the following offense:] Change the occupancy or cause the change of occupancy of the premises located at 4234–40 8th Avenue N.E. without first obtaining a separate building permit from the Building Official, which is contrary to section(s) 301(a) of Seattle Ordinance No. 106350.

A criminal complaint, although stated in the language of a statute, may nevertheless be so vague as to be subject to a motion to make it more definite. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968). Such a motion must be made before trial, in order to be timely. *State v. Thomas, supra.* We cannot determine from the record whether Koh made such a motion. However, the record does indicate that, pursuant to a pretrial order, the City informed Koh through a letter to his attorney, and a pretrial memorandum, that it was alleging that the violation consisted of the subdivision of the 13 permitted units into

"a number substantially greater than that." The City's pretrial memorandum sets forth the dates on which the violations were alleged to have occurred, as well as sufficient other facts to inform Koh adequately of the gist of the violation. Koh does not argue that he was prejudiced in any way in preparing or making his defense to the charge. We find, therefore, that the complaint was sufficiently definite. *State v. Thomas, supra.*

Koh next argues that he did not change the occupancy of his apartment building because the plans approved by the City "reasonably contemplated" what he terms the "unique" and "flexible" configuration into which the apartments were ultimately divided. The trial court found that the approved plans contemplated a building containing 13 dwelling units, each of which was to contain three bedrooms, three separate exit doors, three closets, one living room, one kitchen, and one hallway. Koh argues that the plans also called for extra bathroom sinks and interior doors, and that they were not required to specify such items as separate doorbells or extra refrigerators. He argues that the City, by wrongfully reinterpreting the approved plans, has deprived him of his vested right to use his property in the manner originally contemplated by those plans. *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 275 P.2d 899 (1954).

We cannot agree that Koh has been deprived of a lawful use of his property. The evidence shows that he did much more than simply construct 13 apartments containing added conveniences such as extra bathrooms, entrances and refrigerators. By the use of locked doors and paneling, he permanently, physically divided the 13 permitted units into 38 independent smaller ones, each of which contained its own bathroom, refrigerator, food storage and preparation area, and sleeping area. The Code defines a dwelling unit in section 405 as "a single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation." There can be no doubt that Koh's building

contained 38 such "dwelling units," rather than the permitted 13.

Most, if not all, of these units did not meet the Code's minimum standards for habitability. For example, they did not contain the amount of habitable space required by either section 1307 or section 1308, and they failed to meet requirements for fire–resistant separation walls under section 1302(b).

We emphatically reject Koh's argument that the approved plans contemplated the construction of such obviously substandard living units. Such an interpretation would indeed require a "unique" and "flexible" view of the law. We do not think it can be stretched so far.

Finally, Koh challenges several findings of fact arguing that they are not based upon substantial evidence. He first objects to finding of fact No. 3:

> Mr. Koh resubmitted the plans for a fifteen–unit apartment house minus the extra twenty kitchen sinks and these plans were further altered by the Building Department to allow for only thirteen units.

Koh argues that there is no evidence that he personally resubmitted this plan or that he was aware of its resubmission, containing a lower number of sinks. Therefore, he argues, there is no evidence to support the court's conclusion that he had the requisite intent to violate the Code.

Even assuming that Koh was not aware of the details of the plan submitted in his name, and approved by the Department, we would still uphold Koh's conviction because intent is not an element of the crime.

> "With respect to intent as constituting an element of an offense, there is a well–recognized distinction between statutes denouncing as crime acts *mala in se,* and statutes denouncing as crimes acts *mala prohibita.* In the former, generally speaking, intent is a necessary element, while in the latter it is not so. These principles are not, perhaps, of uniform application in either class, and, perhaps also, less so in the latter than in the former. But the courts generally hold that, where statutes falling within the latter class are in the nature of police regulations, are

for the protection of the public, or are intended to promote the general welfare, intent is not a necessary element of the offense, unless the statute in express terms or by apt words so declares. We have ourselves followed this general rule."

*Seattle v. Gordon,* 54 Wn.2d 516, 519, 342 P.2d 604 (1959), quoting from *State v. Lindberg,* 125 Wash. 51, 59, 215 P. 41 (1923). The goal of the Code is the protection of health and welfare. Section 102 of the Code reads as follows:

The purpose of this Code is to provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the city and certain equipment specifically regulated herein.

No express requirement of intent is contained in section 301(a). Neither does section 204 refer to intent:

It shall be unlawful for any person, firm or corporation to erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish, equip, use, occupy, or maintain any building or structure in the city, or allow the same to be done, contrary to or in violation of any of the provisions of this Code.

Anyone violating or failing to comply with the provisions of this Code shall, upon conviction thereof, be punishable by a fine of not more than $500.00 or by imprisonment for not more than 90 days, or by both such fine and imprisonment, and each day's violation or failure to comply shall constitute a separate offense.

We believe the Code is a type of police regulation, designed to protect public safety and health, the penalty for which is "imposed without regard to any wrongful intention, in order to insure such diligence as will render a violation of the law practically impossible." *State v. Burnam,* 71 Wash. 199, 200, 128 P. 218 (1912).

It is not necessary to show that Koh participated in, or was even aware of, the illegal subdivision of his building, in order to hold him liable. In *State v. Constatine,* 43 Wash. 102, 86 P. 384 (1906), the owner of a saloon was convicted

of selling intoxicating liquors to a minor, where the sale was made by a bartender when the owner was absent and had no knowledge thereof. In *Spokane v. Patterson*, 46 Wash. 93, 89 P. 402 (1907), the defendant was held liable for the discharge of an explosive by his employee, even though he had instructed the employee not to do so.

> [I]t was nevertheless [the defendant's] legal duty to see that the ordinance was not violated. Failing in this, he must suffer the penalty for the violation, since if it were not so, then within the reasoning of the authorities, the public would not be adequately assured of protection from violation of the ordinary police regulations.

*Spokane,* at 97. Therefore, even assuming Koh was personally unaware that his building violated the Code, he is still liable for the violation.

Koh also objects to finding of fact No. 5:

> After an inspection on May 23, 1978 by the Building Department and a followup inspection on June 14, 1978 where Mr. Koh and his attorney, Howard Breskin, were present, the following conditions were observed in the apartment house at 4234–40 8th Avenue Northeast:
> 1. There were 38 doorbells each with a separate buzzer.
> 2. There were 37 separately numbered doors in the manner of 201, 201A, 201B.
> 3. The area designated as a closet or wardrobe in the plans for the one bedroom areas were being used as food preparation areas with a countertop.
> 4. That the one bedroom areas each had a half–kitchen that might consist of a refrigerator, a food cooking device such as a hot plate, storage for food and dishes, and the use of the bathroom sink for washing dishes.
> 5. That the interior doors between the units had been boarded over with paneling.
> 6. The designated living room was being used as a bedroom in all of the units which meant that two bedrooms were connected by an inside door.

Inspector Hanson testified that during the May inspection he saw 38 separately numbered entry doors. He gained admission to apartment 201, and observed that one of the bedrooms had been cut off from the rest of the unit by a

door over which paneling had been nailed. During a subsequent inspection in June, at which Koh and his attorney were present, Hanson examined units 204, 204A, and 204B. In 204A and 204B, Hanson discovered that areas designated in the plans as closets had been converted into kitchens, or "food preparation areas," containing countertops, cabinets, kitchen–type sinks, and refrigerators. The three units were separated from each other by locked doors. Although other witnesses testified that hot plates were commonly used, Hanson did not observe any, nor did he actually see food being stored. Nevertheless, his testimony substantially supports the court's findings. The building contained 38 units, physically separated from each other, that were obviously being used independently for eating, sleeping and living.

Koh also objects to finding of fact No. 6:

That Mr. Koh admitted to the Building Inspector on June 14, 1978 in the presence of his attorney, Mr. Breskin, that unit 201, 201A, 201B, were similar to the rest of the units in the apartment house in that all of the conditions observed there were generally present in the other units. Mr. Koh also admitted that the use of apartments 201, 201A and 201B as observed during the inspection was generally the same use as the rest of the units.

Hanson testified in the following manner about Koh's admission:

Q. [By Mr. Radley] Did you discuss with Mr. Koh at all what the occupancy was of the other units in the building?

A. [By Mr. Hanson] Yes, we did. Mr. Koh verbally admitted that the rest of the building had been altered in similar fashion to the alteration that I discussed concerning Unit 204.

Q. What alteration are you referring to when you say that?

A. The use of the doorways or doors with locks on them to partition the building in such a way that the effective occupancy had become three units based on originally being one.

Q. Does that include the kitchen area, the countertop, refrigerators, in the area designated as a "closet"?

A. Yes.

Although the court erroneously refers to apartment 201 rather than 204, we believe this finding is fully supported by Hanson's testimony.

We do not discuss Koh's remaining objections to the court's findings because they would not affect the result. Neither do we reach Koh's other assignments of error. Reviewing courts will not consider issues noted in an appellant's brief which are not argued or supported by legal authority. *Puget Sound Plywood, Inc. v. Mester,* 86 Wn.2d 135, 542 P.2d 756 (1975).

Koh additionally argues that his due process rights were violated because he received a larger fine in the Superior Court than he did in district court. The record supports no inference that the stiffer fine was intended to punish Koh for exercising his right of appeal from district court. *Colten v. Kentucky,* 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972); *Yakima v. Crafton,* 19 Wn. App. 907, 578 P.2d 88 (1978).

The judgment is affirmed.

CALLOW, C.J., and ANDERSEN, J., concur.