# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CLORRISSA ESTRELLA, | ) | No. 72622-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KING COUNTY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| KING COUNTY BOARD OF APPEALS; | ) | |
| REGIONAL ANIMAL SERVICES OF | ) | |
| KING COUNTY, | ) | |
| | ) | |
| Defendants. | ) | FILED: October 26, 2015 |
| | ) | |

LEACH, J. — Regional Animal Services of King County issued an order to Clorrissa Estrella alleging multiple violations for animal trespassing and vicious animal and requiring her to confine her dog. After the King County Board of Appeals (Board) affirmed the order, Estrella requested superior court review. She claimed that the Board's hearing procedures violated due process. She also challenged the Board's interpretation of the applicable ordinance, its evidentiary rulings, and the sufficiency of the evidence.

The superior court decided that the Board's procedures, as applied to Estrella, violated due process. It affirmed the Board's ordinance interpretations and declined to review the evidentiary challenges. Estrella appeals these

decisions. She claims the superior court should have accepted her facial due process challenge to the Board's hearing rules and renews her challenges to the Board's legal and evidentiary decisions.

Because Estrella cannot show that she has been aggrieved by the superior court's due process decision, we decline to review it. We conclude that the Board correctly applied the King County Code (KCC) and its rules of evidence. And while the Board's record includes sufficient evidence to support its decision, on remand the Board may receive different or additional evidence that changes that decision.

## FACTS

Ron and Laura Weston own approximately 20 mostly forested acres on Vashon Island, Washington. There, they raise goats, sheep, and poultry. They keep their goats in a fenced enclosure. Around 3:15 on the afternoon of December 23, 2013, as Ron Weston parked his truck, he saw two dogs in the goat enclosure, barking and snarling. He found two of his goats and a goose dead and four or five more goats huddled together in a corner of the nearby shed. One of the dogs "ran off up the driveway," but the second one remained in the enclosure.

Weston drove back to his house, got a shotgun, and returned to the goat enclosure. He shot and killed the second dog, a male.

Estrella, who lived nearby, had learned earlier that afternoon that her two dogs had escaped from their kennel. After searching for them for "almost two hours," she learned that one of her dogs was at the Westons' property. She and her boyfriend, Leon Kellogg, met the Westons at their driveway and retrieved the body of her male dog, Godric. Estrella disputes that the second dog Weston saw was her female, Cortana, maintaining that Cortana returned home around 2:00 p.m., too early to have been at the Westons' farm at the time of Ron Weston's discovery.

Estrella posted photos on a fundraising website called "Justice for Godric and Cortana." From these photos, the Westons' son Walter identified the female dog he had seen emerge from bushes near the Westons' house as Cortana. On March 3, 2014, Regional Animal Services of King County issued Estrella a notice of violation and order to comply (NVOC). The order cited Estrella for two violations of KCC 11.04.230(K) (animal trespassing on private property) and two violations of KCC 11.04.230(H) (vicious animal). The citation also ordered Cortana confined under KCC 11.04.260 and .290. Estrella's fines totaled $1,100. Estrella appealed.

On May 21, 2014, the King County Board of Appeals conducted a contested hearing. After swearing in the witnesses, the chair told the parties, "[Y]ou will each have 15 minutes to make your main presentation. The

remainder of the time will be for questions and closing." Estrella's counsel told the chair, "I do have three witnesses to call, and I don't know I can get that done in 15 minutes." Counsel acknowledged that at his request, the Board had doubled the hearing time from the normal allotment of less than 25 minutes to 45 minutes but noted that he did not think 15 minutes would be adequate. The chair replied, "Please do your best, [counsel]." At the end of the hearing, the chair thanked the parties "for staying within our time period."

On June 30, 2014, the Board upheld the NVOC. Estrella filed a petition for judicial review and complaint. The parties stipulated to the superior court's issuance of a writ of review.

On October 13, 2014, the superior court reversed the Board's decision and remanded, ruling, "In the circumstances presented by this case, allotting only 25 minutes for the contested hearing—with no notice of duration being given to plaintiff until the beginning of the hearing, and with no opportunity to request additional time—deprived plaintiff of procedural due process." The court directed, "The Board shall give the plaintiff the option, in advance of hearing, of selecting a 30-minute, 45-minute, or 60-minute hearing."

The following day, the court ruled on Estrella's motion for clarification. It denied Estrella's request for a ruling on her facial challenge to the Board's time allotment protocols. The court also explicitly ruled that KCC 11.04.230(H) does

not require proof of two incidents, a specific mental state, that a dog be alive at the time citation issues, or that the county identify "which dog bit, injured, or killed an animal." And the court referred two evidentiary issues Estrella raised to the Board on remand.

Estrella appeals the Board's decision and both orders of the superior court. The county does not seek any affirmative relief from this court.

## STANDARD OF REVIEW

In an appeal of a superior court order on writ of review, except one claiming manifest error affecting a constitutional right, this court reviews the challenged administrative decision on the record of the administrative tribunal, not the decision of the superior court acting in its appellate capacity.[1] This means we do not rely on the superior court's findings or conclusions.[2] Instead, on issues of law, we review the agency decisions de novo.[3] On issues of fact, we decide if substantial evidence supports the agency decisions.[4] Substantial evidence is evidence sufficient to persuade a fair-minded and rational person of

---

[1] Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wn.2d 22, 29-30, 891 P.2d 29 (1995); Morawek v. City of Bonney Lake, 184 Wn. App. 487, 491, 337 P.3d 1097 (2014); Mansour v. King County, 131 Wn. App. 255, 262, 128 P.3d 1241 (2006).
[2] Morawek, 184 Wn. App. at 491; Bassani v. Bd. of County Comm'rs, 70 Wn. App. 389, 393, 853 P.2d 945 (1993).
[3] Morawek, 184 Wn. App. at 491-92.
[4] Hilltop Terrace, 126 Wn.2d at 29.

the truth of the declared premise.[5] This standard "'is deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority.'"[6] Rules of statutory construction apply to local ordinances.[7] Statutory interpretation presents a question of law we review de novo.[8]

## ANALYSIS

Due Process

First, Estrella appeals the superior court due process decision. She complains that the court decided her challenge on an "as applied" basis instead of her facial challenge. In other words, she has no complaint about the result, only the legal theory used by the trial court to reach its decision.

We decline to address Estrella's due process claim. Under RAP 3.1, "[o]nly an aggrieved party may seek review by the appellate court." "When the word 'aggrieved' appears in a statute, it refers to 'a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or

---

[5] Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009).

[6] Mansour, 131 Wn. App. at 262-63 (quoting Sunderland Family Treatment Servs. v. City of Pasco, 127 Wn.2d 782, 788, 903 P.2d 986 (1995)).

[7] Sleasman v. City of Lacey, 159 Wn.2d 639, 643, 151 P.3d 990 (2007).

[8] Sleasman, 159 Wn.2d at 642.

obligation.'"[9]   Estrella prevailed on an "as applied" constitutional challenge. Although she would prefer to prevail on a facial challenge to the Board procedures, "'[t]he mere fact that one may be hurt in his feelings, or be disappointed over a certain result, or feels that he has been imposed upon, . . . does not entitle him to appeal.   He must be "aggrieved" in a legal sense.'"[10] Because Estrella is not an aggrieved party as to the superior court's due process decision, she may not appeal it.[11]

Interpretation of KCC 11.04.230(H)

Next, Estrella contends that the Board misinterpreted KCC 11.04.230(H). When construing a statute, this court primarily seeks to ascertain and carry out the legislature's intent.[12]   Statutory interpretation begins with the statute or ordinance's plain meaning, which this court discerns from the ordinary meaning of its language in the context of the whole statute, related statutory provisions,

[9] State v. G.A.H., 133 Wn. App. 567, 574, 137 P.3d 66 (2006) (internal quotation marks omitted) (quoting Sheets v. Benevolent & Protective Order of Keglers, 34 Wn.2d 851, 854-55, 210 P.2d 690 (1949)).

[10] Sheets, 34 Wn.2d at 855 (quoting State ex rel. Simeon v. Superior Court, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944)).

[11] Although we decline to review Estrella's due process challenge, we note that the superior court's "as applied" constitutional ruling appears to be based on two factual errors.   First, the Board allotted 45, not 25, minutes for Estrella's hearing.   Second, in a March 2014 e-mail to a King County employee, Estrella's counsel requested "at least 45 minutes" for Estrella's May 2014 hearing, noting, "Last hearing was way too short."   Thus, Estrella cannot fairly say that as applied, she had no notice of the Board's protocols before the hearing started.

[12] State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012).

and the statutory scheme as a whole.[13]  If we find the statute's meaning unambiguous, our inquiry ends.[14]

KCC 11.04.230(H) defines as a "nuisance" "[a]ny animal that has exhibited vicious propensities and constitutes a danger to the safety of persons or property off the animal's premises or lawfully on the animal's premises." The code defines "vicious" as "having performed the act of, or having the propensity to do any act, endangering the safety of any person, animal or property of another, including, but not limited to, biting a human being or attacking a human being or domesticated animal without provocation."[15]

First, Estrella contends that this provision requires proof of two incidents: "the *prior one* where the animal 'exhibited' vicious propensities, and a *subsequent one* where the animal 'constitutes' a danger." We disagree.

The code defines an animal as "vicious" if it has performed or shown the propensity to perform any act "endangering the safety of any person, animal or property of another."[16]  Under a straightforward reading, the second clause of KCC 11.04.230(H), "and constitutes a danger," does not refer to a subsequent vicious act.  Rather, it describes an animal that has become a public nuisance

---

[13] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013); Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).
[14] Lake, 169 Wn.2d at 526.
[15] KCC 11.04.020(BB).
[16] KCC 11.04.020(BB).

because it has performed or shown the propensity to perform any vicious act. We disagree that "[a] plain reading requires proof of distinct elements at two different time points." This reading would create a "one free bite" rule, contrary to the statute's public safety purpose.[17] And because the provision is not ambiguous, we also reject Estrella's argument that the rule of lenity requires us to interpret the provision in her favor.

Estrella also asserts that she should not have been cited for Godric's allegedly vicious behavior because Godric is dead and therefore no longer constitutes a danger. We disagree. Evidence in the record supports a finding that after attacking, injuring, and killing the Westons' domesticated animals without provocation, Godric barked and growled threateningly at Ron Weston. Thus, Godric presented a danger to the safety of persons and property after the attack on the Westons' animals until the moment Weston shot him. This warranted the county's citation of Estrella for Godric's actions. The Board did not err in finding that KCC 11.04.230(H) does not require that a dog be alive at the time of citation.

Estrella also asserts that the code requires a culpable mental state on the part of a dog's owner and the county did not prove this. Under KCC 11.04.190 and .200, "[a]ny person who allows an animal to be maintained in

---

[17] KCC 11.04.010(A).

-9-

violation of this chapter is guilty of a misdemeanor" and potentially liable for both criminal and civil penalties. Estrella argues that "the verb 'allow,' like the word 'permit,' necessarily requires proof of at least knowledge." Therefore, she contends, the county needed to prove that she "harbored a culpable mental state (mens rea) when she acted or failed to act in a way that caused the prohibited conduct." Without this proof, Estrella argues, the county cannot prove nuisance. The Board disagreed, finding that neither KCC 11.04.230(H) nor (K) required proof of any specific mental state.

The legislature has the authority to define strict liability crimes.[18] To determine legislative intent where a statute does not specify a mental element, courts have considered a number of factors:

> Factors to consider that bear upon legislative intent to impose strict liability include: (1) the background rules of the common law, and its conventional mens rea requirement, (2) whether the crime can be characterized as a public welfare offense, (3) the extent to which a strict liability reading of the statute would encompass innocent conduct, (4) the harshness of the penalty, (5) the seriousness of the harm to the public, (6) the ease or difficulty of the defendant ascertaining the true facts, (7) relieving the prosecution of time-consuming and difficult proof of fault, and (8) the number of prosecutions expected.[19]

---

[18] State v. Bash, 130 Wn.2d 594, 604, 925 P.2d 978 (1996).
[19] State v. Semakula, 88 Wn. App. 719, 723-24, 946 P.2d 795 (1997) (citing Bash, 130 Wn.2d at 605-06).

Generally, the harsher the possible punishment, the more likely the legislature intended to require some fault. The lighter the punishment, the more likely lawmakers intended to impose punishment without fault.[20]

To decide if a crime is a public welfare offense with strict liability, courts have distinguished between crimes regarded as mala in se, which require some degree of "guilty knowledge," and statutory offenses regarded as mala prohibita, which, "if properly enacted within the police power, are often upheld without proof of an evil intent, and even without any mental element at all."[21] When adopting a public welfare offense, the legislature decides that "the doing of the act itself imperils the public safety or welfare."[22] Public welfare offenses often involve "'regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se.'"[23]

---

[20] Bash, 130 Wn.2d at 608-09, 610.

[21] Bash, 130 Wn.2d at 606-07 (citing State v. Turner, 78 Wn.2d 276, 280, 474 P.2d 91 (1970)).

[22] City of Seattle v. Gordon, 54 Wn.2d 516, 519, 342 P.2d 604 (1959) (citing 1 FRANCIS WHARTON & J.C. RUPPENTHAL, WHARTON'S CRIMINAL LAW § 113, at 160 (12th ed. 1932)).

[23] Morrissette v. United States, 342 U.S. 246, 258-59, 72 S. Ct. 240, 96 L. Ed. 288 (1952) (quoting United States v. Balint, 258 U.S. 250, 252, 42 S. Ct. 301, 66 L. Ed. 604 (1922)).

For example, City of Seattle v. Koh[24] involved a section of the Seattle Building Code making it a misdemeanor "'to erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish, equip, use, occupy, or maintain any building or structure in the city, or allow the same to be done, contrary to or in violation of any of the provisions of this Code.'" In that case, we concluded that King County did not have to prove intent as an element of a violation. Consequently, we upheld a landlord's criminal convictions for illegally subdividing his apartment building, despite the lack of any proof of knowledge: "Even assuming that Koh was not aware of the details of the plan submitted in his name, and approved by the Department, we would still uphold Koh's conviction because intent is not an element of the crime."[25] We reasoned, "We believe the Code is a type of police regulation, designed to protect public safety and health, the penalty for which is 'imposed without regard to any wrongful intention, in order to insure such diligence as will render a violation of the law practically impossible.'"[26] Along with building, plumbing, and electrical codes, legislative bodies have adopted strict liability for public welfare offenses in areas

---

[24] 26 Wn. App. 708, 714, 614 P.2d 665 (1980) (quoting former Seattle Building Code 204).
[25] Koh, 26 Wn. App. at 713.
[26] Koh, 26 Wn. App. at 714 (quoting State v. Burnam, 71 Wash. 199, 200, 128 P. 218 (1912)).

such as food and drugs, labeling, weights and measures, fire safety, environmental protection, sanitation, and highway safety.[27]

In support of her argument, Estrella cites State v. Bash,[28] in which our Supreme Court held that a dangerous dog statute was not a strict liability crime. The State charged Bash and a second dog owner with felonies after their pit bulls attacked and killed a wheelchair-bound 75-year-old man and seriously wounded a second man who tried to protect him.[29] Our Supreme Court noted that the statutory language "whether the dog has previously been declared potentially dangerous or dangerous," while ambiguous, "envisioned some notice [to the owner] of the dog's status."[30] Therefore, the court concluded that the State needed to prove "that the defendant either knew or should have known that his or her dog was a potentially dangerous or dangerous dog as an element of the crime."[31] Since the court's decision in Bash, the legislature has clarified the language of RCW 16.08.100(3) further, amending the provision to read, "whether or not the dog has previously been declared potentially dangerous or dangerous"

---

[27] Bash, 130 Wn.2d at 607 (quoting Turner, 78 Wn.2d at 280).
[28] 130 Wn.2d 594, 611, 925 P.2d 978 (1996). Former RCW 16.08.100(3) (1987) provided in pertinent part, "The owner of any dog that aggressively attacks and causes severe injury or death of any human, whether the dog has previously been declared potentially dangerous or dangerous, shall be guilty of a class C felony punishable in accordance with RCW 9A.20.021."
[29] Bash, 130 Wn.2d at 597-98.
[30] Bash, 130 Wn.2d at 605.
[31] Bash, 130 Wn.2d at 611.

and adding, "In such a prosecution, the state has the burden of showing that the owner of the dog either knew or should have known that the dog was potentially dangerous as defined in this chapter."[32]

We distinguish Bash. In that case, the potential penalties for the felony charges included five years' imprisonment, a $10,000 fine, or both.[33] Here, although a dog owner can be charged with a misdemeanor for violating KCC 11.04.230(H), King County cited Estrella for a civil violation. The potential criminal penalties for violating the KCC are much less severe than the possible punishment for the Class C felony at issue in Bash.

Moreover, RCW 16.08.090(2) provides, "Potentially dangerous dogs shall be regulated only by local, municipal, and county ordinances. Nothing in this section limits restrictions local jurisdictions may place on owners of potentially dangerous dogs." The chapter defines "potentially dangerous dog" as including "any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property."[34] On this record, this definition includes Godric and Cortana, and the legislature has conferred authority on King County to regulate them and place restrictions on their owner. In several different sections of chapter 16.08 RCW, the legislature has recognized the

_____

[32] LAWS OF 2002, ch. 244, § 3 (emphasis added).
[33] Bash, 130 Wn.2d at 609.
[34] RCW 16.08.070(1).

dangerousness of marauding dogs to both humans and livestock.[35] These statutes, as well as KCC 11.04.230(H), which the statutes authorize, regulate vicious or potentially dangerous dogs without "encompass[ing] seemingly entirely innocent conduct"[36] by dog owners.

The statutory scheme as a whole, low risk that the code will penalize innocent conduct, relatively light penalties, and seriousness of the potential harm to the public weigh in favor of the conclusion that RCW 11.04.230(H) and (K) do not require proof of a specific mental state. Other public welfare statutes support this conclusion. In Koh, the ordinance at issue provided "minimum standards to safeguard life or limb, health, property, and public welfare" by regulating the design, construction, and maintenance of buildings.[37] Similarly, KCC 11.04.010 defines the purpose of the chapter in terms of public welfare: "It is declared the public policy of the county to secure and maintain such levels of animal care and control as will protect animal and human health and safety, and to the greatest degree practicable to prevent injury to property and cruelty to animal life." We

---

[35] See RCW 16.08.100(3) (dog that aggressively attacks and causes severe injury or death to human to be humanely destroyed upon conviction of owner); RCW 16.08.040 (strict liability for owner of dog that bites any person who is in public place or lawfully in private place, including the property of the dog owner); RCW 16.08.030 (owner of dog found killing any domestic animal has duty to kill such dog); RCW 16.08.020 (lawful to kill any dog chasing, biting, injuring, or killing any domestic animal; duty of dog owner to keep confined any dog found chasing, biting, or injuring any domestic animal).

[36] Bash, 130 Wn.2d at 605.

[37] Koh, 26 Wn. App. at 714.

note that inconsistent with Estrella's argument about the verb "allow," this court construed the code provision in Koh as lacking an intent element despite the legislature's use of the words "maintain" and "allow." KCC 11.04.230(K) does not require a specific mental state.

Evidence for Board's Decision

Estrella challenges the sufficiency of the evidence to support the Board's decision, noting that "the County had no direct evidence that Cortana and Godric were involved in harming any animal or exhibiting any vicious propensities." The county's burden of proof is a preponderance of the evidence.[38] "Evidence can be either direct or circumstantial, and one type of evidence is not necessarily more or less valuable than the other."[39]

Contrary to Estrella's assertions, sufficient evidence supported a finding that both of Estrella's dogs participated in killing and injuring the Westons' animals, and King County did not simply establish "guilt by mere association." Ron Weston found two dogs barking and snarling in his goat enclosure, surrounded by dead and injured goats and geese. One dog was indisputably Godric. The Board weighed conflicting testimony and determined that the second dog was Cortana. Estrella's arguments that a coyote, another dog, or

---

[38] Mansour, 131 Wn. App. at 259; King County Bd. of Appeals R. 25(D)(1)(a).

[39] Morawek, 184 Wn. App. at 493 (citing Rogers Potato Serv., LLC v. Countrywide Potato, LLC, 152 Wn.2d 387, 391, 97 P.3d 745 (2004)).

even the Westons' own livestock protection dog killed and injured the animals involve speculation and invite this court to reweigh the evidence. In this context, this court does not weigh the evidence.

And the foreign cases she cites do not support her position. In People v. Noga,[40] for example, undisputed evidence showed that only one of two dogs had injured the complainant's poodle, while the other "remained to the side of the incident, and did not exhibit any aggressive behavior." Because of this evidence and the fact that neither dog had injured a person, the appellate court concluded that the lower court erred by ordering that both dogs be destroyed.[41] In Hobbs v. Kent County SPCA, Inc.,[42] the reviewing court reversed the Dog Control Panel's euthanasia order after finding that the victim had not testified at the hearing and had only identified the premises from which the dog came, not the actual dog that bit her. Given that on that day, the victim had seen a person walking three different dogs from the same property, the court concluded that substantial evidence did not support the panel's decision.

Estrella's further allegations of "misidentification and suggestive cross-species lineup" do not persuade us. In the cases Estrella cites, all of which

---

[40] 645 N.Y.S.2d 268, 268, 168 Misc. 2d 131 (N.Y. Sup. Ct. 1996).

[41] Noga, 645 N.Y.S.2d at 269.

[42] 2011 WL 773448, at *5-6 (Del. Com. Pl. Feb. 4, 2011). This is an unpublished case; Delaware law permits its citation in briefs. Del. Sup. Ct. R. 14(g)(ii). Estrella did not file and serve a copy of the opinion with her brief, however, and thus did not comply with GR 14.1(b).

-17-

involve human criminal defendants and not dogs, reviewing courts disapproved police photographic identification procedures where witnesses "had little opportunity to observe the [defendant]"[43] or where police presented a single "impermissibly suggestive" photograph.[44] Estrella's case involves no criminal charges and no government-directed identification procedure. Ron and Walter Weston directly observed the dogs and later identified them from several photographs posted on Estrella's own website. King County did not unfairly suggest, via photographs or otherwise, that Godric and Cortana were the dogs involved.

Although we conclude that sufficient evidence supported the Board's determination, we recognize that the parties may introduce additional or different evidence on remand. This opinion does not purport to recommend any particular result at a new hearing.

---

[43] State v. Burrell, 28 Wn. App. 606, 609, 625 P.2d 726 (1981) (citing State v. Thorkelson, 25 Wn. App. 615, 619, 611 P.2d 1278 (1980)); Simmons v. United States, 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) (danger of improper suggestion by police procedure higher where witness "obtained only a brief glimpse of a criminal"); State v. Jaime, 168 Wn.2d 857, 869-71, 233 P.3d 554 (2010) (Sanders, J., concurring) (poor lighting, focus on weapon, stress, and cross-racial identification issues all affected reliability of eyewitness identification of defendant).

[44] State v. Maupin, 63 Wn. App. 887, 896, 822 P.2d 355 (1992).

Evidentiary Issues

Estrella challenges Board evidentiary rulings that may arise at the new hearing on remand. Under county rules of practice and procedures,

> The Board of Appeals should be liberal in passing on the admissibility of evidence. All relevant evidence shall be admitted if it is the type of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might otherwise bar the admission of such in civil actions.[45]

We generally review agency decisions to admit or exclude evidence for abuse of discretion.[46] An agency abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[47]

First, Estrella argues the chair erred by failing to rule on the county's objection to counsel's cross-examination of Ron Weston and motion to strike Weston's answer. Weston testified that in 2008, dogs belonging to renters living in the house Estrella occupied in 2013 attacked the Westons' goats, and the dogs were removed from the county after an animal control action. Counsel then asked, "And you know that based on personal knowledge? Or hearsay?" The prosecutor objected, asserting, "It's a legal question that doesn't belong here." After Estrella's counsel moved to strike Weston's answer, the prosecutor

---

[45] King County Bd. of Appeals R. 25(D)(1).
[46] State v. Perez-Valdez, 172 Wn.2d 808, 814, 265 P.3d 853 (2011).
[47] Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

objected again, arguing that Weston "said what he knew and there's been no basis that he doesn't have the foundation for it. We'd ask the Board to consider it." The chair said only, "All right." Estrella's counsel responded, "Okay. All right," and continued cross-examination.

We reject Estrella's claim. As a threshold matter, Estrella does not show that she is an aggrieved party to the chair's failure to rule on the county's objection. And because she did not lodge her own objection to the chair's implicit denial of her motion to strike, RAP 2.5 bars her from raising this issue on appeal.

Second, Estrella assigns error to the Board's consideration of written statements from Walter Weston and Ryan Harrigan. Estrella's counsel objected to the county's offer of the statements before closing argument, based on timeliness and the fact that Harrigan's statement was not in declaration form. Counsel then made an offer of proof for a witness who did not testify, to which the prosecutor objected. The chair intervened: "Excuse me. Excuse me. Now, both of you are offering after testimony has been—after you've made your presentations, so we will consider both" and "[g]ive the evidence the weight that we believe it should be given." The chair allowed Estrella's counsel to complete his offer of proof.

Under the Board's "liberal" rules of evidence, the chair did not abuse its discretion by admitting Walter Weston's and Harrigan's statements. The Board

rules permit even hearsay testimony, provided it is used for the purpose of supplementing or explaining direct evidence.[48] The rules do not require that written statements be in any specific form, and Estrella cites no authority for her assertion that the statements here, which Weston and Harrigan made under penalty of perjury, are inadmissible. Estrella's counsel was able to make an offer of proof and could have instead chosen to submit this witness's testimony in declaration form. The chair did not err in any of its evidentiary decisions.

Attorney Fees

Estrella seeks reasonable attorney fees under RAP 18.1 "on the equitable basis that she is conferring a substantial benefit to an ascertainable class (taxpayers and dog owners) by protecting constitutional principles." Under the equitable "common fund" doctrine, a successful litigant "who confers a substantial benefit on an ascertainable class" may recover attorney fees.[49]

Because Estrella's appeal fails, we deny her request.

Estrella's Statements of Additional Authorities

One day before oral argument, Estrella filed with this court a statement of additional authorities raising three new arguments. The morning of oral

---

[48] King County Bd. of Appeals R. 25(D)(4).

[49] Blue Sky Advocates v. State, 107 Wn.2d 112, 124, 727 P.2d 644 (1986) (Dore, J., dissenting); Pub. Util. Dist. No. 1 of Snohomish County v. Kottsick, 86 Wn.2d 388, 390-91, 545 P.2d 1 (1976); Weiss v. Bruno, 83 Wn.2d 911, 912-13, 523 P.2d 915 (1974).

argument, Estrella filed a second statement of additional authorities, citing a 2014 case and the Restatement (Second) of Torts (1979). At oral argument counsel acknowledged that all legal authority cited in the statements was available at the time of filing of the appellant's briefs.

RAP 10.8 permits parties to file statements of additional authorities. However, RAP 10.8 specifies that such a statement "should not contain argument, but should identify the issue for which each authority is offered." Moreover, we understand the purpose of this rule as providing parties with an opportunity to bring to the court's attention cases decided after the parties submitted their briefs. "We do not view it as being intended to permit parties to submit to the court cases that they failed to timely identify when preparing their briefs."[50]

The appellate rules provide an orderly briefing process for each party to advance its arguments and respond to those of the opposing party. Submitting new arguments at the last minute in the guise of a statement of additional authorities frustrates this orderly exchange of arguments, denies the opposing party a fair opportunity to respond, and wastes the court's time.

---

[50] O'Neill v. City of Shoreline, 183 Wn. App. 15, 23, 332 P.3d 1099 (2014).

## CONCLUSION

Because Estrella is not an aggrieved party for purposes of appealing the superior court's order on writ of review, we decline to review the court's due process ruling. We affirm the Board's interpretation of the KCC and its evidentiary decisions. While we conclude on this record that sufficient evidence supported the Board's decision, we do not intend this opinion to suggest any particular result at a new hearing.

_Leach, J._

WE CONCUR:

_Trickey, J_          _Schindler, J_

-23-