# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSEPH R. AMEDSON, | No. 47195-7-II |
| Respondent, | |
| v. | |
| PUGET SOUND ELECTRIC COMPANY, a Washington corporation; CHARLES W. CLARK and "JANE DOE" CLARK, husband and wife, both individually and jointly as a marital community; and TRAVELERS CASUALTY AND SURETY COMPANY, BOND #105336057, | UNPUBLISHED OPINION |
| Appellants. | |

MAXA, J. – Puget Sound Electric Company (Puget Sound), Charles Clark and Travelers Casualty and Surety Company (Travelers) appeal the trial court's order granting summary judgment in favor of homebuilder Joseph Amedson on his claim against Puget Sound's electrical contractor's bond issued by Travelers.

Amedson hired Puget Sound to perform electrical work on three houses he was building. Puget Sound's work on the project ended after it had completed the "rough-in" electrical work but before it had the chance to perform the "trim" work and complete the project. Amedson determined that Puget Sound's work was deficient and violated the electrical code in several respects. He filed suit for breach of contract and for recovery against Puget Sound's bond. The trial court granted summary judgment in favor of Amedson on the bond claim.

Amedson argues that summary judgment was proper because Puget Sound failed to make its electrical installation in accordance with the applicable electrical code, which was a condition of the bond. Puget Sound argues that summary judgment was improper because (1) all the alleged deficiencies either were part of the trim work or would have been corrected easily during performance of the trim work, and it was not allowed to complete the trim work; and (2) other electricians worked on the job after Puget Sound stopped work but before the deficiencies were discovered, and therefore it is unclear whether the deficiencies were caused by Puget Sound. As a result, Puget Sound argues that a genuine issue of material fact exists regarding whether it failed to perform its work in accordance with the applicable electrical code.

We hold that the trial court erred in granting summary judgment because a genuine issue of material fact exists regarding whether Puget Sound failed to make an installation in accordance with the applicable electrical code. Accordingly, we reverse and remand for further proceedings.

FACTS

In November 2012, Amedson contracted Puget Sound to install the rough-in and trim electrical work on three homes that Amedson was building. The contracts specified that payment for the work on each home would come in three installments: (1) initial payment of $2,000 to cover material and permit costs, (2) payment of $4,500 when the rough-in work passed inspection, and (3) final payment of $2,000 plus sales tax after the trim work passed final inspection.

"Rough-in" work refers to the electrical work that will be covered by drywall such as wiring and plug boxes. "Trim" work refers to the electrical work done after the drywall is

installed and includes what will be seen by the homeowner, such as light fixtures, outlets, and switches. A Labor and Industries (L&I) electrical inspector must inspect and approve the rough-in work before drywall may be installed. RCW 19.28.101(4). After the trim work is installed, an L&I inspector conducts a final inspection. RCW 19.28.101(5). Typically, the same electrical contractor completes both stages of installation because the contractor needs to have knowledge of what was installed behind the wall during rough-in in order to do the trim work.

According to Clark, Puget Sound's president and sole shareholder, Puget Sound completed the rough-in by late December. L&I electrical inspector Greg Harris inspected Puget Sound's rough-in work on December 28 and approved each home. After the rough-in work passed inspection, general contractors began installing the drywall and painting, but work was delayed because of water intrusion and subcontractor problems.

At some point after the rough-in inspection, Clark and Amedson had an extended dispute over sales tax and minor contract changes, which was resolved in April 2013. On April 12, Clark received a letter from Amedson's lawyer regarding the dispute, which indicated that (1) Puget Sound had not yet begun the trim work at that time, (2) there was not much work remaining to complete the scope of the contract, and (3) Clark should meet with Amedson to discuss fixtures and materials for trim in order to complete the work. The letter did not indicate that there were any issues with the quality of Puget Sound's work.

After the rough-in inspection, Puget Sound did some additional work, but Puget Sound never completed the trim work and Puget Sound was not paid for any trim work. Puget Sound last worked on the job on April 17. Amedson alleges that Puget Sound simply ceased working and represented that it had completed the scope of the contract at that time. But Clark alleges

that Amedson terminated Puget Sound and hired new electrical contractors to complete the trim work.

Amedson hired a new electrical contractor, CTI Construction Services LLC (CTI), to complete the trim work. Later, Amedson hired SIRB Electric LLC (SIRB Electric) to troubleshoot defects and deficiencies in the electrical work. Sam Sirb of SIRB Electric compiled a report for Amedson listing all the defects and code violations that SIRB Electric corrected. Amedson and Sirb attributed the electrical deficiencies to the rough-in work done by Puget Sound.

Amedson filed suit against Puget Sound, Clark, and Travelers, asserting multiple contract claims as well as a claim against Puget Sound's bond. Amedson filed a summary judgment motion on the bond claim, arguing that Puget Sound's rough-in work did not comply with applicable codes and standards as required by the bond conditions.

Amedson provided his own declaration in support of his summary judgment motion as well as declarations from Sirb and Harris that discussed the alleged deficiencies in Puget Sound's rough-in work. Sirb identified several deficiencies in the electrical work: (1) circuit load calculation errors and overloading of circuit breakers, (2) discontinuity in branch circuits, (3) incomplete circuits to all rooms and missing ground fault circuit interrupter protection, (4) poor workmanship, and (5) improper placement of or missing receptacles and/or junction boxes. Harris's declaration stated that the defects listed by Sirb violated specific provisions of the 2008 National Electric Code (2008 NEC).

In opposition to summary judgment, Puget Sound and Travelers filed declarations by Clark and electrical contractor Mark James. Both Clark and James stated that the alleged

deficiencies were all items that normally would be completed during the trim phase or easily corrected during that phase. Clark stated, "I did all rough in work properly and anything else would have been completed in the trim phase." Clerk's Papers (CP) at 156. James stated that the deficiencies Sirb described "are well within the range of the work quality typically found on a residential job site." CP at 197. James also concluded that "the alleged deficiencies could easily have been completed in a short period of time" if the rough-in electrician had been allowed to complete the job. CP at 197.

Clark and James also noted that it was unclear who caused the deficiencies because more than one electrical contractor performed work on the project before SIRB Electric became involved. Clark stated, "I cannot determine the extent of nor whether the alleged deficiencies (incomplete work) are attributable by me or the other three contractors on site." CP at 155.

The trial court granted summary judgment in favor of Amedson and awarded Amedson $4,000, the amount of the Travelers bond held by Puget Sound.[1] Travelers filed a motion to reconsider, which the trial court denied. Puget Sound, Clark and Travelers appeal.

ANALYSIS

A.      STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is

---

[1] After the court granted summary judgment on the bond claim, Amedson voluntarily dismissed all other claims.

entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370. "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck*, 184 Wn.2d at 370. "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

When seeking summary judgment, the initial burden is on the moving party to show there is no genuine issue of material fact. *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). Once the moving party has made such a showing, the burden is on the nonmoving party to set forth specific facts that rebut the moving party's contentions and indicate a genuine issue of material fact. *Id.*

B.     FAILURE TO PERFORM ELECTRICAL WORK TO CODE

Puget Sound and Travelers argue that the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding whether Puget Sound failed to make the rough-in installation in accordance with the applicable electrical code. We agree.

1.     Electrical Contractor Bond

RCW 19.28.041(3) requires licensed electrical contractors to carry a bond totaling $4,000 at all times. The statute also states the bond conditions:

> The bond shall be conditioned that in any installation or maintenance of wires or equipment to convey electrical current, and equipment to be operated by electrical current, the principal will comply with the provisions of this chapter and with any electrical ordinance, building code, or regulation of a city or town adopted pursuant to RCW 19.28.010(3) that is in effect at the time of entering into a contract. The bond shall be conditioned further that the principal will pay for all . . . damages that may be sustained by any person . . . due to a failure of the principal to make the installation or maintenance in accordance with this chapter or any applicable ordinance, building code, or regulation of a city or town adopted pursuant to RCW 19.28.010(3).

RCW 19.28.041(3).

Under RCW 19.28.071, any person may bring an action against the bond surety for damages or injury caused by the principal's breach of the bond conditions. Claims payable under the bond include the "failure of the principal to make the installation in accordance with the provisions of chapter 19.28 RCW, or any ordinance, building code, or regulation applicable thereto." At the time of Puget Sound's contract and work with Amedson, the 2008 NEC supplied the applicable regulations and standards for electrical work. Former WAC 296-46B-010(1) (2008).

RCW 19.28.071 involves strict liability for the breach of bond conditions. *See City of Seattle v. Koh*, 26 Wn. App. 708, 713-14, 614 P.2d 665 (1980) (discussing a building code provision). Accordingly, there is no need for a bond claimant to show the contractor's negligence or breach of contract in order to recover the bond. The claimant need only show that the contractor failed to make an installation in accordance with the applicable standards and provisions and that there were resulting damages.

2.  Puget Sound's Alleged Deficient Work

Amedson's declaration that Puget Sound's work was defective, Sirb's list of specific deficiencies in the electric work, and Harris's declaration that the listed deficiencies would be electrical code violations supported Amedson's bond claim. However, Puget Sound argues that summary judgment was not proper because (1) the deficiencies Sirb identified do not reflect the failure to make an installation in accordance with the 2008 NEC because those deficiencies normally would be corrected during the trim phase of the project, and (2) Sirb's list of defects could be attributed to an intervening contractor. We agree.

7

a. Correction of Deficiencies During Trim Phase

Puget Sound and Travelers argue that the deficiencies Sirb identified do not reflect the failure to make an installation in accordance with the 2008 NEC because Puget Sound performed the rough-in work properly and those problems normally would be corrected during the trim phase of the project.

The key issue in this case is whether Puget Sound's electrical work was deficient or merely incomplete. The declarations of Clark and James, which must be taken as true for summary judgment purposes, provide evidence that Puget Sound's rough-in work was not deficient despite the code violations that Sirb identifies because Puget Sound had not yet finished the trim phase.

Clark stated that the alleged deficiencies involved work that normally is completed during the trim phase, not the rough-in phase:

> I am certain that a) the items of which [Amedson and Sirb] complain are common items to be completed during the trim phase – in other words, the things he describes are items which are incomplete until the trim work is finished; b) [Puget Sound] would have been able to easily complete those matters during the trim stage, and c) . . . would have been completed by [Puget Sound] during the trim phase according to contractual terms.

CP at 155. He concluded that "I did all rough in work properly and anything else would have been completed in the trim phase." CP at 156.

James provided expert testimony supporting Clark's declaration. James stated: (1) "the alleged defective items all are common issues, commonly corrected during the trim phase," CP at 196; (2) "even the work described in the SIRB and Harris declarations were either to be done during the trim phase or would easily be completed during the trim phase by the electrician who did the rough in work," CP at 197; and (3) "had the rough in electrician been allowed to complete

8

the job, . . . the alleged deficiencies could easily have been completed in a short period of time." CP at 197. James concluded that the deficiencies Sirb described "are well within the range of work quality typically found on a residential job site." CP at 197.

Significantly, Amedson's declarations did not expressly address Puget Sound's claims. Sirb did not state that the deficiencies he identified constituted electrical code violations if they existed when the rough-in work was done but before the trim work was complete. And although Harris confirmed that the defects listed by Sirb would violate specific provisions of the 2008 NEC, Harris did not indicate *when* such defects would be in violation – after rough-in or after trim. The limited scope of the Sirb and Harris declarations is important because Puget Sound only completed the rough-in.

Clark also noted that Harris passed Puget Sound's rough-in installation and approved the drywall installation, which indicates that the rough-in was in accordance with the 2008 NEC. And during the course of installation, Clark did not receive any complaints from either Amedson or Amedson's lawyer about the quality of Puget Sound's rough-in work.

Based on the evidence Puget Sound and Travelers submitted, we hold that a genuine issue of material fact exists regarding whether Puget Sound failed to make the rough-in installation in accordance with the applicable electrical code or whether Puget Sound's work was simply incomplete when its work on the project ended.[2]

---

[2] A question of fact also exists as to whether Amedson terminated Puget Sound or whether Puget Sound simply ceased working. Resolution of this issue may affect whether Puget Sound's work was deficient.

b.     Responsibility for Deficiencies

Puget Sound and Travelers also argue that Amedson fails to show that the alleged deficient work is in fact attributable to Puget Sound. Puget Sound claims that because other electricians worked on the project before Sirb's inspection identified the deficiencies, there is a question of what electrical contractor caused the deficiencies.

According to Amedson's declaration and his motion for summary judgment, CTI was hired after Puget Sound to complete the trim phase. CTI could not properly complete the installation, and Amedson then hired SIRB Electric to troubleshoot the electrical problems in order to pass inspection. Amedson relies on the list of defects provided by Sirb during his troubleshooting. However, Sirb did not observe the job until after CTI's intervening work. Therefore, Sirb cannot rule out the possibility that CTI's work could have been the cause of some of the alleged defects. James also noted that often drywall contractors can disturb or damage the rough-in wiring during drywall installation.

Amedson provides no evidence to show that it was in fact Puget Sound, and not CTI or another contractor, who caused the problems noted by Sirb. Both Clark and James stated that they cannot determine from the declarations who caused the alleged deficiencies. Therefore, there is a genuine issue of material fact regarding whether the alleged defects were the result of Puget Sound's work.

Accordingly, we hold that there is a genuine issue of material fact regarding (1) whether the alleged defects would be considered in violation of the 2008 NEC at the time Puget Sound ceased work or whether the alleged defects were simply items that could not be completed until

the trim phase, and (2) whether the alleged defects were the fault of Puget Sound or attributable to another contractor.

We reverse the trial court's grant of summary judgment in favor of Amedson and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
SUTTON, J.